976 F.2d 515
 UNITED STATES of America, Plaintiff-Appellee,
v.
REAL PROPERTY LOCATED AT SECTION 18, TOWNSHIP 23, RANGE 9,
SUNNYVIEW PLAT, LOTS 4 & 5, BLOCK 4, LAKEVIEW DR., QUINAULT
LAKE, OLYMPIC NATIONAL PARK, GRAYS HARBOR COUNTY, WA,
Improvements, Appurtenances, Fixtures, Attachments, and
Easements, Defendant,
and
Diana Carlson, Claimant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
REAL PROPERTY LOCATED AT SECTION 18, TOWNSHIP 23, RANGE 9,
SUNNYVIEW PLAT, LOTS 4 & 5, BLOCK 4, LAKEVIEW DR., QUINAULT
LAKE, OLYMPIC NATIONAL PARK, GRAYS HARBOR COUNTY, WA,
Improvements, Appurtenances, Fixtures, Attachments, and
Easements, Defendant,
and
Richard Lee Malmgren, Claimant-Appellant.
 Nos. 91-35121, 91-35158.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 6, 1992.
Decided Sept. 30, 1992.
 
 Richard J. Troberman, Seattle, Wash., for appellant Carlson.
 Joseph R. Cicero, Smith, Alling, Lane, Tacoma, Wash., for appellant Malmgren.
 Richard E. Cohen, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Washington.
 Before: PREGERSON, TROTT, and KLEINFELD, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 
 1
 This case involves an action by the government under 21 U.S.C. § 881(a)(7) for forfeiture of a tract of land and a mobile home which were used to commit and facilitate a violation of the Controlled Substances Act, 21 U.S.C. § 841. Diana Carlson, the owner of the land, and Richard Malmgren, the owner of the mobile home, timely filed separate claims contesting the forfeitures. Carlson's claim was dismissed before trial under the doctrine of collateral estoppel because she had pled guilty to the underlying criminal charge. As a result, the land was forfeited to the government. Following trial of Malmgren's claim, the district court found that Malmgren had standing to contest the forfeiture of the mobile home, but not the land. Further, the court held that the mobile home should be forfeited because Malmgren failed to prove that he did not have knowledge of the marijuana growing operation conducted within the mobile home, which was the underlying criminal basis for the forfeiture action.
 
 
 2
 Carlson and Malmgren filed separate appeals to this court. We have jurisdiction under 28 U.S.C. § 1291. We affirm the district court's judgment as to Malmgren, and reverse and remand the district court's dismissal of Carlson's action.
 
 I. FACTS
 
 3
 Malmgren and Carlson lived together from 1970 to 1987 but never married. Between 1974 and 1987 they lived in a mobile home located on a tract of land in Olympic National Park, Washington. Although both the land and the mobile home were purchased with their joint funds, title to the tract of land was held in Carlson's name and title to the mobile home was held in Malmgren's name. Following the couple's separation in August 1987, Carlson continued to live in the mobile home. Malmgren moved off the property but continued to operate a shake mill located on the property. On several occasions after he moved out, Malmgren was allowed to use the telephone in the mobile home, and once or twice, the bathroom.
 
 
 4
 On August 3, 1989, federal agents executed a search warrant at the mobile home. Inside they found sixty-six live marijuana plants, equipment for a marijuana growing operation, including metal halide grow light systems, ballasts, timers, and various quantities of processed marijuana.
 
 
 5
 Carlson pled guilty to one count of knowingly and intentionally manufacturing marijuana, a controlled substance, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C), and 841(b)(5). The government brought the present forfeiture action in October 1989 on the ground that the land and mobile home were used to commit and facilitate the commission of a violation of the Controlled Substances Act, 21 U.S.C. §§ 841 et seq. 21 U.S.C. § 881(a)(7).
 
 
 6
 Carlson and Malmgren timely filed separate claims contesting the forfeiture. The district court dismissed Carlson's claim, sua sponte, holding that she was collaterally estopped from challenging the forfeiture because of her guilty plea to the criminal charge. Carlson was therefore denied a trial on her claim. Following a one-day trial of Malmgren's claim, the court held that Malmgren had standing to contest the forfeiture of the mobile home but not to contest the forfeiture of the land because he had no ownership interest in the land. Further, the district court concluded that Malmgren had failed to prove by a preponderance of the evidence that he lacked knowledge of the marijuana growing operation. Accordingly, the district court ruled that both the land and mobile home were forfeited to the government. This appeal followed.
 
 II. DISCUSSION
 A. Carlson
 
 7
 Carlson contends that her guilty plea to the criminal charge should not bar her from contesting forfeiture of the land because the character of the land was not fully and fairly litigated as part of her guilty plea. We agree.
 
 
 8
 Carlson bases this contention on the ground that she should have been allowed to present evidence to establish that the tract of land at issue consisted of two separate, legally divided lots--not one single tract, as the government contends--and that the mobile home was located on only one lot. Because the character of the property at issue was not actually litigated and necessarily decided in the first action, collateral estoppel cannot preclude Carlson from having her day in court.[1]
 
 
 9
 By definition, the doctrine of collateral estoppel prevents relitigation by the parties of issues actually litigated and necessarily decided in a prior action. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979); Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1357 (9th Cir.1985). Collateral estoppel is applied only when the issues in the subsequent action are identical to those of the first action. Parklane, 439 U.S. at 326 n. 5, 99 S.Ct. at 649 n. 5; Levi Strauss, 778 F.2d at 1357. We review de novo a district court's application of collateral estoppel principles. Ayers v. City of Richmond, 895 F.2d at 1270.
 
 
 10
 In United States v. Smith, 730 F.2d 1052 (6th Cir.1984), the Sixth Circuit considered whether a guilty plea to criminal charges collaterally estopped a claimant from contesting a civil forfeiture. The district court granted summary judgment for the government in the forfeiture action against a 1978 Pontiac Bonneville on the ground that the claimants' conviction for unlawful distribution of cocaine collaterally estopped them from contesting the forfeiture. Id. at 1057. The appellate court reversed, finding that whether "the automobile was used to facilitate [the crime] ... was not 'necessary and essential to the judgment' on the merits." Id. Because the use of the automobile in the criminal act was not actually litigated and necessarily decided in the criminal proceeding, the Sixth Circuit concluded that collateral estoppel was incorrectly applied by the district court.
 
 
 11
 Our circuit has used the following criteria to analyze issue preclusion in a case involving a criminal matter:
 
 
 12
 The criteria for the application of collateral estoppel are: (1) the prior conviction must have been for a serious offense so that the defendant was motivated to fully litigate the charges; (2) there must have been a full and fair trial to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must of necessity have been decided at the criminal trial; and (4) the party against whom the collateral estoppel is asserted was a party or in privity with a party to the prior trial.
 
 
 13
 Ayers v. City of Richmond, 895 F.2d at 1271.
 
 
 14
 Applying this criteria to the present case, there is no dispute that the prior conviction was for a serious offense such that Carlson was adequately motivated to fully litigate the criminal charge. Violation of 21 U.S.C. § 841(a)(1) is a drug felony punishable by more than one year in prison. In addition, there is no dispute as to the validity of Carlson's conviction, or as to whether Carlson was a party to the first litigation. Her guilty plea admitted the truth of all the elements charged in the offense, and thus established the validity of those facts for purposes of collateral estoppel, as we discuss below. This leaves the third prong of the test requiring that the question at issue in the subsequent civil matter have been actually litigated and necessarily decided in the prior conviction.
 
 
 15
 Carlson's guilty plea to the criminal charge cannot have a preclusive effect on the civil litigation of the issue of how much land the government is entitled to. Whether the tract of land owned by Carlson consisted of one single lot or two separate lots, and on which of the alleged two lots the mobile home was located, was not charged in the indictment and was not addressed at the hearing where Carlson pled guilty. By the government's admission, the only issue decided was Carlson's guilt as to the criminal charge of manufacturing marijuana. Findings concerning the status or character of the property were not necessary or essential to Carlson's guilty plea.
 
 
 16
 The reasoning used by the Supreme Court in Haring v. Prosise, 462 U.S. 306, 103 S.Ct. 2368, 76 L.Ed.2d 595 (1983), is in accord. There, Prosise pled guilty in Virginia state court to manufacturing the controlled substance PCP. Prosise subsequently brought a damages action under 42 U.S.C. § 1983 against police officers who had searched his home. Id. The district court held Prosise's guilty plea estopped him from claiming a Fourth Amendment violation. Id. at 309-10, 103 S.Ct. at 2371. The Supreme Court reversed, concluding that Prosise's guilty plea did not preclude his § 1983 action.
 
 
 17
 It is clear ... that the doctrine of collateral estoppel would not be invoked in this case.... First, the legality of the search ... was not actually litigated in the criminal proceedings. Indeed, no issue was 'actually litigated' in the state proceeding since Prosise declined to contest his guilt in any way. Second, the criminal proceeding did not actually decide against Prosise any issue on which he must prevail in order to establish his § 1983 claim. The only question ... determined by Prosise's guilty plea ... was whether [he] unlawfully engaged in the manufacture of a controlled substance.
 
 
 18
 Finally, none of the issues in the § 1983 action could have been "necessarily" determined in the criminal proceeding.... Indeed, a determination that the search ... was illegal would have been entirely irrelevant in the context of the guilty plea proceeding.
 
 
 19
 Haring, 462 U.S. at 316, 103 S.Ct. at 2374.
 
 
 20
 United States v. $31,697.59 Cash, 665 F.2d 903 (9th Cir.1982), cited by the government, is consistent with our holding today. There, the claimants pled guilty in the first action to a violation of 31 U.S.C. §§ 1101 and 1058, knowingly bringing the defendant property $31,697.59 into the U.S. without filing the appropriate report. Id. at 904. In the subsequent forfeiture action, the district court applied the doctrine of collateral estoppel and granted summary judgment in favor of the government. Id. The district court ruled "that the criminal conviction established the forfeitability of the money in question." Id. We affirmed on appeal. We held that "appellants are collaterally estopped from litigating the matters disposed of in the criminal case by their guilty plea." Id. at 906. The guilty plea by the claimants-defendants necessarily required a determination that that specific sum was involved in the crime charged.
 
 
 21
 Although it is settled law in this circuit that a guilty plea may be used to establish issue preclusion in a subsequent civil suit, preclusion has only been allowed where an element of the crime to which the defendant pled guilty or of which he was convicted was at issue in the second suit. See, e.g., United States v. $31,697.59 Cash, 665 F.2d 903; United States v. Bejar-Matrecios, 618 F.2d 81 (9th Cir.1980).
 
 
 22
 Our holding in United States v. $31,697.59 Cash reflects the general rule that only matters necessarily decided in the prior action are barred from relitigation by collateral estoppel. Carlson's guilty plea did not dispose of the issues concerning the land's character or its use in facilitating the crime of drug manufacture. Therefore, collateral estoppel cannot preclude Carlson from contesting the forfeiture of the land.
 
 B. Malmgren
 
 23
 Malmgren argues that the district court erred in two respects. First, he asserts that the district court erred in finding that he did not have an interest in the land, thus denying him standing to contest its forfeiture. Second, he argues that the district court's finding that he had knowledge of the marijuana growing operation was clearly erroneous. We disagree.
 
 
 24
 To contest a forfeiture, a claimant must have an interest in the defendant property. Baker v. United States, 722 F.2d 517, 518 (9th Cir.1983). Standing is a threshold issue which we review de novo. Bruce v. United States, 759 F.2d 755, 757 (9th Cir.1985). The claimant has the burden of establishing, by a preponderance of the evidence, that he has an interest in the property. United States v. One Parcel of Land, Etc., 902 F.2d 1443, 1444 (9th Cir.1990).
 
 
 25
 Malmgren asserts that he had a meritricious relationship with Carlson which gave him an interest in the land. Although he was never legally married to Carlson, Malmgren contends that because they lived together between approximately 1970 and 1987, and jointly purchased both the land and the mobile home, their relationship was sufficient to support his claimed ownership interest. The district court concluded that Malmgren did not have any interest in the land because the land was titled to Carlson as a single woman. Malmgren also asserts that he and Carlson had a verbal agreement that the land and mobile home would be equally divided in the event that they ever decided to sell or if they split up. The district court concluded that this claim was also without merit. Carlson and Malmgren did split up in the fall of 1987. However, title to the real property remained exclusively with Carlson and title to the mobile home remained with Malmgren. In addition, Malmgren continued to pay at least $400.00 per month to Carlson for use of her property to operate the shake mill. The trial court's findings of fact, establishing that Malmgren had no interest in the real estate, are not clearly erroneous.
 
 
 26
 Malmgren also argues that he lacked knowledge of the marijuana growing operation. Under the innocent owner exception to forfeiture of property used to facilitate a violation of the Controlled Substances Act, no property is forfeited if the owner was without knowledge of the criminal activity or did not consent. 21 U.S.C. § 881(a)(7). The burden of proving qualification under this exception rests with the claimant to prove by a preponderance of the evidence that he neither knew of nor consented to the activity on which the forfeiture action is based. One Parcel of Land, Known as Lot 111-B, 902 F.2d at 1445.
 
 
 27
 The district court found that Malmgren did not prove by a preponderance of the evidence that he had no knowledge that the mobile home was used to grow marijuana. Findings of fact of the district court in forfeiture cases tried to the court must be affirmed unless clearly erroneous. United States v. One Twin Engine Beech Airplane, Etc., 533 F.2d 1106, 1107 (9th Cir.1976). We conclude that the district court's finding was not clearly erroneous based on Malmgren's knowledge of the smell of marijuana, the boarded up windows, and his visits inside the mobile home after he had moved out.
 
 
 28
 Accordingly, we affirm the district court's holdings that Malmgren lacks standing to contest the forfeiture of the land, and that Malmgren failed to prove that he lacked knowledge of the marijuana growing operation.
 
 C. Attorney's Fees
 
 29
 Malmgren and Carlson seek attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412.
 
 
 30
 Section 2412(d)(1)(A) provides for attorney's fees and other expenses "to a prevailing party other than the United States ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified." "Substantially justified" means "justified in substance or in the main." Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1987) (interpreting the EAJA).
 
 
 31
 We deny Malmgren's request for attorney's fees because the government's position "was substantially justified." 28 U.S.C. § 2412(d)(1)(A).
 
 
 32
 An application for attorney's fees and expenses must be submitted to the court "within thirty days of final judgment in the action." 28 U.S.C. § 2412(d)(1)(B). A final judgment is "a judgment that is final and not appealable." 28 U.S.C. § 2412(d)(2)(G).
 
 
 33
 Because there has been no final judgment in Carlson's case, her request is premature. Sohappy v. Hodel, 911 F.2d 1312, 1321 (9th Cir.1990).
 
 III. CONCLUSION
 
 34
 We reverse the district court's dismissal of Carlson's challenge to the forfeiture action and the forfeiture of the land. We remand to the district court to allow her an opportunity to litigate the land issues. We affirm the district court judgment as to Malmgren.
 
 
 35
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 The government argues that even if Carlson was improperly denied an opportunity to litigate this issue, remand is unnecessary because this issue was litigated and decided in favor of the government at Malmgren's trial. This argument is incorrect. The district court's determination in Malmgren's case that there was only a single tract of land cannot be used against Carlson to preclude her from litigating the issue. Collateral estoppel requires that the party against whom the issue preclusion is being asserted must have been a party or privy in both actions. Ayers v. City of Richmond, 895 F.2d 1267, 1271 (9th Cir.1990). Here, because Carlson was not a party to the government's litigation against Malmgren, any determination made in that action cannot be used against Carlson. Further, there is no argument that, as a privy, Carlson is affected by the decision in Malmgren's case. Because Malmgren had no standing as to the land, Carlson could not be affected even as a privy of Malmgren's