78 F.3d 595
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
BASLER TURBO-67 CONVERSION DC-3 AIRCRAFT (1), Defendant,
and
Innovair Aviation Ltd. and Bryan Carmichael, Claimants-Appellants.
 No. 94-16876.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 14, 1996.
Decided Feb. 29, 1996.
 
 Before: HUG, HALL and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 After investigating the drug dealing activities of the principals of a company known as Air Colombia, S.A., the government commenced an action to forfeit certain assets. One asset was a Technology Licensing Agreement (TLA) between Basler Turbo Conversions, Inc. (BTC) and Innovair Aviation Ltd. Another asset was a DC-3 aircraft with FAA Registration No. N95BF. Innovair asserted a claim to both assets, but the district court determined that Innovair lacked standing. This appeal ensued, and we reverse.
 
 
 3
 1. Initially, it is clear that the mere fact, if it be a fact, that money paid by Air Colombia was tainted in its hands is insufficient to show that the taint attached to Innovair's interests in the TLA or in the aircraft. If Innovair had no knowledge that the funds were traceable to illegal narcotics transactions, assets obtained with those funds were free from taint. See United States v. 92 Buena Vista Ave., 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993). Similarly, the government cannot rely upon a relation back theory to forfeit the assets. See id. at ----, 113 S.Ct. at 1134-37; United States v. Real Property Located at 10936 Oak Run Circle, 9 F.3d 74, 76 (9th Cir.1993). On this record, there is not a shard of evidence that Innovair had any knowledge whatever of any improper source for Air Colombia's funds, and the government does not appear to argue to the contrary.
 
 
 4
 2. It is equally clear that a claimant to property must have a demonstrable legal interest in that property. See United States v. $191,910.00 in United States Currency, 16 F.3d 1051, 1057 (9th Cir.1994); United States v. Real Property Located at Section 18, 976 F.2d 515, 519-20 (9th Cir.1992); United States v. $122,043.00 in United States Currency, 792 F.2d 1470, 1473 (9th Cir.1986). No doubt Innovair must shoulder the burden of showing that it has an interest in the property in question. See United States v. $20,193.39 United States Currency, 16 F.3d 344, 346 (9th Cir.1994); Real Property Located at Section 18, 976 F.2d at 520; United States v. One Parcel of Land, Known as Lot 111-B, 902 F.2d 1443, 1444 (9th Cir.1990) (per curiam). However, that interest need not even be an ownership interest; it need only be a legally recognized interest. Even a possessory interest would be sufficient. See $191,910.00 in United States Currency, 16 F.3d at 1057; United States v. 1982 Sanger 24' Spectra Boat, 738 F.2d 1043, 1046 (9th Cir.1984) ("It is not necessary therefore that a claimant under the forfeiture statute allege ownership. A lesser property interest such as possession creates standing."); cf. United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). What Innovair claims is an interest as a contracting party to the TLA and an interest in the aircraft that was in the hands of BTC for conversion. Of course, it must show more than a straw title, for the interest itself must be a real one. See United States v. Vacant Land Located at 10th St. and Challenger Way in Palmdale, CA, 15 F.3d 128, 130 (9th Cir.1993). It is plain to us that Innovair has spelled out a sufficient interest to have standing as to both of the assets. Our reasons will now be adumbrated.
 
 
 5
 3. The contracting parties to the TLA were BTC and Innovair. That document was a contract which could have great value or little value depending on technological feasibility and consumer interest. But there can be no doubt that it was a valid executory contract in which each party agreed to perform certain acts and as to which both parties performed in part. In other words, it was a document which generated rights and duties in both parties. Indeed, there is no dispute that Innovair had paid at least $300,000 and obligated itself to pay up to $1,375,000 more. Innovair purportedly did pay the additional $1,375,000, and the parties spill much ink over whether it was entitled to use the particular funds in question to do so. We find that debate to be mere persiflage for the purposes of determining standing. In the first place, if Innovair paid only $300,000, that is an interest. Moreover, what Innovair paid is not necessarily, or even particularly, a proper measure of what its rights were worth. The annals of economic history are replete with instances where people paid very little for an asset that ultimately made them a fortune, or paid a fortune for an asset and lost it all.
 
 
 6
 In short, we are mystified by the government's assertion that when it seized the TLA it seized something in which Innovair had no legal interest.
 
 
 7
 4. The government also asserts that once the district court allowed the TLA to be transferred to BTC in exchange for a bond, Innovair somehow lost its standing to contest the seizure. That argument is even more mystifying than the government's first one.
 
 
 8
 The government asserts and the district court determined that because the bond was an amount equal to certain funds paid by Air Colombia to Innovair (or to BTC), Innovair could no longer have standing to contest the seizure and sale of the TLA. We know of no authority that permits the sort of thaumaturgy that turns a valuable property interest into nothing at all by the simple expedient of obtaining a "substitute res." Cf. Fed.Adm. & Maritime R. E(5)(c).
 
 
 9
 We recognize that if the government had merely released any claims it might have had to the TLA and had left BTC and Innovair in the same positions that they occupied before the government interfered, Innovair may have had no reason to complain and even less reason to assert an interest in the substitute res. In that event, Innovair would simply be free to engage in its contest with BTC. However, the agreement for transfer of the TLA does not merely provide for a release of government claims. It provides that upon submission of the bond no "claimant or potential claimant ... shall have [a] claim to the Technology Licensing Agreement...." In other words, Innovair's rights in the TLA were terminated at that point, no matter how valuable they may have been, and no matter how innocent it was. We see no justification for the government's position; surely, Innovair did not lose standing to assert its claim against the bond, which now stands as the sole substitute for the contract rights it previously held.
 
 
 10
 4. The government's claim that the Wisconsin litigation precludes Innovair's standing is meritless. In the first place, the government's assertion amounts to an attempt to use offensive collateral estoppel against Innovair. Of course, that doctrine exists. See Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n. 4, 99 S.Ct. 645, 649 n. 4, 58 L.Ed.2d 552 (1979); Spink v. Lockheed Corp., 60 F.3d 616, 624 (9th Cir.1995), cert. granted sub nom Lockheed Corp. v. Spink, --- U.S. ----, 116 S.Ct. 806, --- L.Ed.2d ----, 64 U.S.L.W. 3497 (Jan. 19, 1996) (No. 95-809); Pena v. Gardner, 976 F.2d 469, 472 (9th Cir.1992). However, its use is a delicate matter and is one which is subject to the "broad discretion" of the trial court. Parklane Hosiery, 439 U.S. at 331, 99 S.Ct. at 651. That discretion has never been exercised.
 
 
 11
 Moreover, when issue preclusion is sought, the seeker must introduce a sufficient record to clearly demonstrate the fact that the very issues have been previously litigated between its opponent and someone else. See Clark v. Bear Sterns & Co., Inc., 966 F.2d 1318, 1320 (9th Cir.1992). The government has made no attempt to demonstrate any such thing regarding the Wisconsin litigation. In fact, that litigation was settled on terms and for reasons unknown to us at this juncture.
 
 
 12
 Finally, on this record we cannot ascertain whether any of the issues in this litigation, which seeks to forfeit Innovair's rights in the TLA and in Aircraft N95BF, are even slightly similar to those in the BTC litigation.
 
 
 13
 5. Aircraft N95BF was the subject of a contract between Innovair and Air Colombia under which Innovair, using its rights pursuant to the TLA, agreed to sell the renovated aircraft, and Air Colombia agreed to purchase it. Under the TLA, Innovair could subcontract the renovation of Aircraft N95BF to BTC, and it did so. There can be no doubt that the aircraft was identified to the contract itself.
 
 
 14
 Innovair claims that the aircraft was supposed to have been registered in its name and that some of the funds which went into its renovation came from Innovair, even if it received money from Air Colombia. The government responds and the district court found that at the time of seizure Innovair had neither title to nor possession of the aircraft. Thus, the district court reasoned, Innovair had no standing. In that it erred.
 
 
 15
 In the first place, the fact that Innovair used money which was paid to it by Air Colombia does not show that Innovair had no interest in the aircraft. Innovair's contract with Air Colombia provided that Air Colombia would pay money and did not preclude Innovair's use of the funds to build the aircraft. Moreover, the contract did not provide that the funds would remain those of Air Colombia, or that they would be held in trust.
 
 
 16
 More importantly, it is quite clear that the aircraft was identified to the contract. That was sufficient to give the buyer, Innovair, a legal interest. The Uniform Commercial Code, adopted in Arizona, provides that:
 
 
 17
 The buyer obtains a special property and an insurable interest in goods by identification of existing goods as goods to which the contract refers even though the goods so identified are non-conforming and he has an option to return or reject them.... In the absence of explicit agreement identification occurs:
 
 
 18
 1. When the contract is made if it is for the sale of goods already existing and identified....
 
 
 19
 Ariz.Rev.Code § 47-2501(1); see also Hold-Trade Int'l, Inc. v. Adams Bank and Trust (In re Quality Processing, Inc.), 9 F.3d 1360, 1363-64 (8th Cir.1993), which discusses this UCC provision. The UCC also provides that if a third party deals with goods identified to a contract "[a] right of action against the third party is in either party to the contract for sale who has ... a special property or an insurable interest in the goods...."[1] Ariz.Rev.Code § 47-2722. That surely is a sufficient legal interest to give Innovair standing to contest the forfeiture of Aircraft N95BF.
 
 
 20
 REVERSED and REMANDED for further proceedings consistent with this disposition.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 If Wisconsin law applies, the result would be the same. See Wis.Stat. §§ 402.501, 402.722