167 F.3d 509
 99 Cal. Daily Op. Serv. 939, 98 Daily Journal
D.A.R. 1177
 UNITED STATES of America, Plaintiff-Appellee-Cross-Appellant,
v.
REAL PROPERTY KNOWN AS 22249 DOLOROSA STREET, WOODLAND
HILLS, CALIFORNIA; One 1991 Ford F-150 Pickup, VIN #
1FTEX15H8MKA04524; One 1990 Porsche Carrera, VIN #
WPOCB2966LS471363; $179,690.00 In U.S. Currency;
$175,000.00 In U.S. Currency; $4,126.00 In U.S. Currency;
$4,072.00 In U.S. Currency; $2,640.00 In U.S. Currency, Defendants,
and
James Hopkins; Gloria B. Lowndes; Gary Lowndes,
Claimants-Appellants-Cross-Appellees.
 
 1
 Nos. 97-55642, 97-55650.
 
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 11, 1998.
Decided Feb. 3, 1999.
 
 2
 Paul L. Gabbert, Santa Monica, California, for the claimants/appellants/cross-appellees.
 
 
 3
 John E. Lee, Ruth C. Pinkel, Assistant United States Attorneys, Los Angeles, California, for the plaintiff/appellee/cross-appellant.
 
 
 4
 Appeal from the United States District Court Central District of California; Consuelo B. Marshall, District Judge, Presiding. D.C. No. CV-95-04518-CBM.
 
 
 5
 Before: CANBY and THOMAS, Circuit Judges, and SCHWARZER,* Senior District Judge.
 
 SCHWARZER, Senior District Judge:
 
 6
 James Hopkins ("Hopkins"), Gloria Lowndes, and Gary Lowndes (Hopkins' mother and step-father, "the Lowndeses") appeal a judgment forfeiting real property situated at 22249 Dolorosa Street, Woodland Hills, California, pursuant to 21 U.S.C. § 881(a)(6) (1994). We hold that a claimant in a civil forfeiture proceeding who withdraws his claim after an adverse probable cause determination retains standing to appeal, and that in relying on evidence it had suppressed, the district court erred in finding probable cause.[1] Accordingly, we reverse.
 
 FACTS AND PROCEDURAL HISTORY
 
 7
 Officers from the Ventura County Sheriff's Department arrested Hopkins, a suspected drug dealer, as he was driving from his residence at 22249 Dolorosa Street to a public storage facility. They searched the car and in the trunk found a cardboard box, which they labeled and later inventoried in the Sheriff's Department Property Records as "Item No. 23 ... cardboard box cont. misc. pictures, trophies, and papers." The officers then conducted a warrantless and nonconsensual search of Hopkins's residence where they seized various other documents identified in the Sheriff Department's property records as Item 29 ("Cardboard shoe box cont. misc. paperwork"), Item 30 ("Tax records & misc. paperwork") and Item 32 ("Tax return statements, misc. real estate paperwork, 24 photographs").
 
 
 8
 The government instituted civil forfeiture proceedings against the Dolorosa property. To make the requisite showing of probable cause that Hopkins had bought or improved the property with drug proceeds, see 19 U.S.C. § 1615 (1994), the government sought to introduce documents seized from Hopkins's residence and car. Claimants moved to suppress the evidence seized from the property. The district court ruled that all documents would be suppressed and excluded unless it was clearly shown which documents were not a product of the illegal search of the property. Finding the evidence insufficient to establish which documents had come from the property and which from the car, it suppressed all of the documentary evidence and ruled that it could not be considered for the purpose of establishing probable cause. The district court, after hearing testimony based on the documentary evidence, then found "there is some evidence that Mr. Hopkins' funds that were in banks or in a bank were used, that there was some tracing" and, therefore, "that for probable cause purposes ... the record is sufficient as to all of the property, including the real property." Hopkins then "orally withdrew his claim to the defendant real property" and the Lowndeses proceeded to trial. The jury returned a verdict forfeiting the property.
 
 
 9
 Hopkins and the Lowndeses now appeal from the judgment, and the government cross-appeals on the ground that Hopkins lacks standing because he withdrew his claim.
 
 
 10
 The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1345 (1994) and 28 U.S.C. § 1355 (1994). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 (1994) and reverse.
 
 I. APPELLANTS' STANDING
 
 11
 Standing is a threshold issue which we review de novo. See United States v. Real Property Located at Section 18, 976 F.2d 515, 520 (9th Cir.1992). "To have standing to challenge a forfeiture, a claimant must allege that he has an ownership or other interest in the forfeited property." United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1057 (9th Cir.1994).
 
 
 12
 There is no dispute that Hopkins sufficiently alleged an ownership interest (nor does the government question the Lowndeses' standing). The government contends, however, that Hopkins relinquished his standing to appeal when he withdrew his claim after the district court's adverse probable cause ruling. The contention is without merit.
 
 
 13
 In a civil forfeiture proceeding under 21 U.S.C. § 881, a claimant can "defend against forfeiture of [his] property in either or both of two ways: first, [he] may refute the government's showing of probable cause, and second, [he] may come forward with affirmative evidence and prove, by a preponderance of the evidence, that the [property] was not used for the illegal purpose as alleged." United States v. One 56-Foot Motor Yacht Named Tahuna, 702 F.2d 1276, 1281 (9th Cir.1983); see also United States v. 3814 NW Thurman Street, 164 F.3d 1191, 1195-96 (9th Cir.1999) ("Once the government has demonstrated probable cause to support forfeiture, the burden shifts to the claimant. The claimant can then either refute the government's showing of probable cause or provide an affirmative defense to forfeiture." (citations omitted)). By withdrawing his claim following the adverse probable cause determination, Hopkins made his election to defend by refuting the government's showing of probable cause, rather than proceeding to trial on the issue of the source of funds. He was entitled to make that choice without loss of his standing.
 
 
 14
 II. PROBABLE CAUSE TO FORFEIT THE DOLOROSA STREET PROPERTY
 
 
 15
 Hopkins and the Lowndeses contend that the district court erred when it found probable cause. That ruling implicates three issues: (1) Did the Lowndeses have Fourth Amendment standing to suppress evidence seized from the property? (2) Did the district court err in suppressing all the documentary evidence seized by the officers? (3) If the evidence was properly suppressed, did the court err in finding probable cause?
 
 
 16
 A. Did the Lowndeses Have Fourth Amendment Standing to Suppress Evidence Seized from the Property?
 
 
 17
 The government contends that the Lowndeses lacked an expectation of privacy in the property and, therefore, have no standing to have the seized evidence suppressed. The government argues that, while it did not raise the issue below, Fourth Amendment standing is not a waivable issue and may be raised for the first time on appeal.
 
 
 18
 While it is true that the government can first raise the issue on appeal when the defendant appeals, see United States v. Taketa, 923 F.2d 665, 670 (9th Cir.1991), it cannot do so when the government itself appeals from the granting of a motion to suppress, see United States v. Spilotro, 800 F.2d 959, 962-63 (9th Cir.1986); United States v. Sherwin, 539 F.2d 1, 5 n. 4 (9th Cir.1976) (en banc). Were the government's argument accepted, the claimant would be prejudiced by being deprived of an opportunity to present evidence to counter the government's contention first raised on appeal that he had no expectation of privacy. Having failed to raise it below, the government has waived the Fourth Amendment standing issue.
 
 
 19
 B. Did the District Court Err in Suppressing All the Documentary Evidence?
 
 
 20
 The government contends that the court committed clear error when it suppressed the documentary evidence on the ground that the government was unable to prove clearly which documents came from the car, rather than from the property. It is for the district court to determine which items seized were obtained as the result of an illegal search and which were obtained lawfully. See United States v. Van Damme, 48 F.3d 461, 467 (9th Cir.1995); United States v. Carneiro, 861 F.2d 1171, 1183 (9th Cir.1988). We review that determination for clear error, see United States v. VonWillie, 59 F.3d 922, 925 (9th Cir.1995), and find none.
 
 
 21
 At the probable cause hearing, the government offered the box labeled Item No. 23 seized from the car which contained Hopkins's 1984, 1987, and 1988 income tax returns; back up documents for his 1989, 1990, 1991, and 1992 returns; bank statements and checks from Independence Bank and Sanwa Bank; fifty to sixty receipts relating to Reels of Sound (Hopkins's recording studio business); escrow papers relating to the real property; and invoices relating to the remodeling of the property. An officer testified that the box had been kept in the locked property room, but no officer was able to testify from personal knowledge that the records then contained in the box had been in the box when it was taken from the car and did not come from the property. The property records, prepared on the day the box was seized from the car, state only that Item No. 23 contained "miscellaneous pictures, trophies, and papers." The box offered at the hearing contained no trophies or pictures. The property records listing documents seized from the residence, on the other hand, list opened and unopened mail, mortgage statements, receipts, an IRS statement, a loan application, tax records, miscellaneous paperwork, and miscellaneous escrow papers. Hopkins denied having placed any of those documents in the car and he and the Lowndeses argued that they were taken from the property. On this record, the district court did not clearly err in finding that it could not separate the documents lawfully taken from the car from those illegally seized from the residence.
 
 
 22
 The government argues, citing United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir.1995), that the court erred in suppressing the evidence because there was ample evidence that Item 23 was in "substantially the same condition" as when it was seized and there was "a reasonable probability [it] ha[d] not been changed in important respects." The argument is inapposite since the government produced no evidence from which it could reasonably be inferred that the documents found in Item 23 at the hearing were in the box when it was taken from the car rather than having come from the residence. In any event, the issue here is not whether the evidence is sufficiently reliable to be submitted to a jury, as in Matta-Ballesteros, but whether the court's finding that the government had failed to show which documents had not been unlawfully seized was clearly erroneous.
 
 
 23
 C. If the Evidence Was Properly Suppressed, Did the Court Err in Finding Probable Cause?
 
 
 24
 We review de novo the district court's probable cause determination in a forfeiture proceeding. See United States v.1982 Yukon Delta Houseboat, 774 F.2d 1432, 1434 (9th Cir.1985). The burden of establishing probable cause is on the government. See 19 U.S.C. § 1615. To establish probable cause and "pass the point of mere suspicion," the government must "demonstrate by some credible evidence the probability that the [seized asset] was in fact connected to drugs." United States v. U.S. Currency, $30,060.00, 39 F.3d 1039, 1041 (9th Cir.1994); see also United States v. $405,089.23 U.S. Currency, 122 F.3d 1285, 1290-91 (9th Cir.1997) (finding no probable cause absent a "sufficient connection between the detailed narcotics activity and the particular assets targeted by the Government's forfeiture proceeding"). The government cannot rely on suppressed evidence to establish probable cause. See $191,910.00, 16 F.3d at 1063-64; United States v. $277,000.00 U.S. Currency, 941 F.2d 898, 902 (9th Cir.1991).
 
 
 25
 The district court found probable cause on the ground that "there is some evidence that Mr. Hopkins' funds that were in banks ... were used, that there was some tracing." The record shows that the court arrived at its finding after hearing the testimony of an officer, which was based on documents seized from the residence: checking records, mortgage payments, tax records, and records of expenditures for remodeling. Those records, however, were suppressed, and without them there was no substantial evidence that money was funnelled, or traced, from Hopkins's bank accounts to the house. Accordingly, the finding was clearly erroneous.
 
 
 26
 The government contends that there is nonetheless sufficient evidence of probable cause, independent of the documents, to support the forfeiture judgment. That evidence tends to show that Hopkins was a large-scale drug dealer who possessed large amounts of cash and other expensive assets, which he tried to conceal, and that he lacked a legitimate source of income. That evidence, however, is insufficient to establish the requisite connection between Hopkins's drug activity and the property. See $405,089.23, 122 F.3d at 1290. The government must show that Hopkins used the proceeds from drug transactions to purchase or improve the property. Here, there is no admissible evidence that Hopkins invested any money in the property, let alone drug money. In the absence of evidence of a link between the property and illegal drug transactions, the evidence is insufficient to establish probable cause.
 
 
 27
 The judgment is REVERSED.
 
 
 
 *
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Because we find no probable cause, we do not reach appellants' other assignments of error