190 F.3d 977 (9th Cir. 1999)
 UNITED STATES OF AMERICA, Plaintiff-Appellee Cross-Appellant,
v.
REAL PROPERTY KNOWN AS 22249 DOLOROSA STREET, WOODLAND HILLS, CALIFORNIA; ONE 1991 FORD F-150 PICKUP, VIN 1FTEX15H8MKA04524; ONE 1990 PORSCHE CARRERA, VIN #WPOCB2966LS471363; $179,690.00IN U.S. CURRENCY;$175,000.00IN U.S. CURRENCY; $4,126.000IN U.S. CURRENCY; $4,072.00IN U.S. CURRENCY; $2,640.00IN U.S. CURRENCY, Defendants,
and
JAMES HOPKINS; GLORIA B. LOWNDES; GARY LOWNDES, Claimants-Appellants Cross-Appellees.
 Nos. 97-55642, 97-55650
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Decided July 20, 1999
Amended September 8, 1999
 
 1
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 
 
 2
 Before: William C. Canby, Jr. and Sidney R. Thomas, Circuit Judges, and William W Schwarzer,* Senior District Judge.
 
 SCHWARZER, Senior District Judge:
 
 3
 We must decide whether claimants in this forfeiture action against their real property at 22249 Dolorosa Street, Woodland Hills, California, are entitled to attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. S 2412 (1994) ("EAJA").[1] In the district court, claimants James Hopkins, his mother, Gloria Lowndes, and his stepfather, Gary Lowndes, had moved successfully to suppress all documentary evidence seized from the defendant real property after a warrantless, non consensual search. At the probable cause hearing, however, the district court received testimony based on the suppressed evidence and found probable cause that funds used for the Dolorosa property had come from Hopkins' drug proceeds, reasoning that funds used for the property could be "traced" to Hopkins' bank accounts. Claimants appealed and the government cross-appealed alleging lack of standing. We reversed the judgment, holding that the cross-appeal lacked merit, that the suppression ruling was not clearly erroneous, and that the finding of probable cause, having been based on suppressed evidence alone, was clear error. See United States v. 22249 Dolorosa St., 167 F.3d 509 (9th Cir. 1999). Claimants then moved in this court to recover attorneys' fees.
 
 I. PROPER FORUM
 
 4
 Claimants moved under the EAJA in this court, seeking fees and costs only on appeal. In their reply brief, claimants sought to supplement their claim by including fees incurred in the district court, asserting that this request had been omitted in error and was still timely. See 28 U.S.C.S 2412(d)(1)(B) (1994) (applicationsfor fees must be made within thirty days of final judgment). We need not decide the timeliness issue because "we will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in [the] opening brief." Officers for Justice v. Civil Serv. Comm'n, 979 F.2d 721, 726 (9th Cir. 1992) (quoting International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir. 1985)). Because we see no reason to depart from this principle here, we treat the claim as limited to attorneys' fees on appeal.
 
 
 5
 The EAJA states that "a court " shall award fees to a prevailing party. 28 U.S.C. S 2412(d)(1)(A). In the absence of a statutory specification of what court is to make the award, we see no reason to read "court" to exclude the court of appeals. We assume that in the usual case in which fees are sought for the entire litigation, the determination of whether the government was "substantially justified"--and therefore not liable for fees under EAJA provision 28 U.S.C. S 2412(d)(1)(A)--is for the district court to make. See Pierce v. Underwood, 487 U.S. 552, 559 (1988); Hammock v. Bowen, 879 F.2d 498, 504 (9th Cir. 1989). But when fees are sought on appeal only, the court of appeals may be in as good a position if not a better one than the district court to make the determination. In United States v. 329.73 Acres , 704 F.2d 800, 811 (5th Cir. 1983) (en banc), the court remanded the EAJA fee request to the district court although only fees on appeal were sought, reasoning that the en banc court was not well suited to determine if the government was substantially justified and that, while remand to the initial panel of the court of appeals might have been appropriate, remand to the district court would in any event be required to fix the rate of interest on the judgment. The court went on to discuss the relevant considerations bearing on whether the court of appeals or the district court is better situated to make the initial EAJA determination, leaving the matter to case-by-case determination, but observing:
 
 
 6
 In some, perhaps many, appeals, the appellate court deciding the appeal may most readily decide also whether the government's appeal was substantially justified, and the most efficient and expeditious method of deciding the issue may be for the appellate court itself to determine them and (if able to do so without remand as to amount at issue) also fix the litigation expenses to be awarded the private litigant if he is found entitled to them.
 
 
 7
 Id. The EAJA requires that "[w]hether or not the position of the United States was substantially justified shall be determined on the basis of the record." See 28 U.S.C. S 2412(d)(1)(B). The government has not urged a remand to the district court and no reason appears why we are not equally if not better suited than the district court to evaluate the record to determine whether the government's position on the appeal was substantially justified.
 
 II. ELIGIBILITY FOR FEES
 A. The Section S 2412(d)(1)(A) Claim
 1. Prevailing Party
 
 8
 While the EAJA contains no applicable definition of "prevailing party," we consider claimants" `prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the par-ties sought in bringing suit.' " National Wildlife Fed'n v. Federal Energy Regulatory Comm'n, 870 F.2d 542, 544 (9th Cir. 1989) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (internal quotation marks omitted)).
 
 
 9
 The government argues that claimants are not prevailing parties because, viewing the civil forfeiture action as a whole, they ultimately prevailed as to only 28.7% of the total value of the defendant properties in the original complaint, which included, in addition to the Dolorosa property, two vehicles and five currency defendants. Even assuming that the government's valuation of the properties isreasonable, we reject the argument. There is no requirement that success be measured by comparison of the value of the respective properties. Forfeiture of the Dolorosa property was a "significant issue" even if its monetary value was less than that of the property forfeited.
 
 2. Substantial Justification
 
 10
 Because claimants are prevailing parties, they are entitled to fees "unless the court finds that the position of the United States was substantially justified." 28 U.S.C. S 2412(d)(1)(A). The government argues first, that because it successfully obtained forfeiture of the bulk of the assets involved in this action, it cannot be said that under the totality of the circumstances the governments's overall position was not substantially justified. We must, however, view the government's position separately with respect to each of the forfeiture defendants. Civil forfeiture actions under 21 U.S.C. S 881(a)(6) "are in rem proceedings in which the property seized is the defendant." United States v. Real Property Located at Incline Village, 47 F.3d 1511, 1519 (9th Cir. 1995), rev'd on other grounds, 517 U.S. 820 (1996). That the government chose to join defendants under Federal Rule of Civil Procedure 20(a) (permitting, but not requiring, joinder of defendants), does not allow it to escape liability for unjustified positions with respect to any one of them. See Gregory C. Sisk, The Essentials of the Equal Access To Justice Act: Court Awards of Attorney's Fees for Unreasonable Government Conduct (Part Two), 56 La. L. Rev. 1, 14 (1995) (when a case involves different cases or controversies in the constitutional sense, the " `position of the United States' should be evaluated in the context of each separable claim joined in the single action."). We must, therefore, determine whether the government's position with respect to the Dolorosa property was substantially justified without regard to the forfeiture of most of claimants' other properties.
 
 
 11
 Next, the government argues that it had probable cause to seek the forfeiture of the Dolorosa property. That it had probable cause at the time of the initial seizure is not disputed but does not resolve the issue before us. This case presents a "situation[ ] in which the government is justified initially but its subsequent unjustified actions [may] merit an award of attorney's fees for the unjustified portion of the conduct." See United States v. Rubin, 97 F.3d 373, 375 (9th Cir. 1996). Thus, in forfeiture actions, the government's position that the property is forfeitable must remain substantially justified throughout the action. See United States v. $12,248 U.S. Currency, 957 F.2d 1513, 1517 (9th Cir. 1992) (affirming EAJA fee award because, despite an earlier determination of probable cause, the government's poor investigation of claimant's case and unreasonable delay in pursuing the forfeiture action demonstrated that the government's position was not substantially justified); cf. United States v. 255 Broadway, 9 F.3d 1000, 1007 (1st Cir. 1993) (affirming denial of EAJA fees in part because "the claimant points to no intervening evidence that might have given the government pause over whether to continue with the [forfeiture] case"); United States v. One 1985 Chevrolet Corvette, 914 F.2d 804, 809 (6th Cir. 1990) (reversing award of EAJA fees where "[t]he government's position in initiating the forfeiture proceeding was substantially justified, and nothing that occurred during the trial required the government to abandon the proceeding").
 
 
 12
 Once the district court suppressed all of the documentary evidence permitting tracing of funds, substantial justification for the government's forfeiture of the Dolorosa property ceased. That the district court nevertheless sustained the forfeiture action against the Dolorosa property does not shield the government from liability for fees. " `Our precedents do not treat the district judge's agreement with the government in the initial case as conclusive as to whether or not the government was reasonable.' " Oregon Natural Resources Council v. Madigan, 980 F.2d 1330, 1332(9th Cir. 1992) (quoting United States v. One 1984 Ford Van, 873 F.2d 1281, 1282 (9th Cir 1989)); see also Underwood, 487 U.S. at 569 ("Conceivably, the government could take a position that is not substantially justified, yet win."). In our merits opinion we held that the "tracing" rationale for probable cause articulated by the district court was clearly erroneous because it was based on the evidence the court suppressed, see 22249 Dolorosa St., 167 F.3d at 513-14, and on appeal, the government did not defend the district court's rationale, implicitly conceding the error.
 
 
 13
 Thus, the government is left with its final argument that non documentary evidence provided circumstantial proof that Hopkins paid for substantial remodeling of the Dolorosa property with drug proceeds. There is no doubt that"[c]ircumstantial evidence of drug transactions is sufficient to support the establishment of probable cause in a forfeiture proceeding." United States v. $5,644,540.00 in U.S. Currency, 799 F.2d 1357, 1363 (9th Cir. 1986) (quoting United States v. $93,685.61 in U.S. Currency, 730 F.2d 571, 572 (9th Cir. 1984)). We held in the merits opinion that the non documentary evidence "tends to show that Hopkins was a large-scale drug dealer who possessed large amounts of cash and other expensive assets, which he tried to conceal, and that he lacked a legitimate source of income . . . [but that ] there is no admissible evidence that Hopkins invested any money in the property, let alone drug money." 22249 Dolorosa St., 167 F.3d at 514. We are aware of no support in this circuit for a finding of probable cause on so gossamer a showing as the government has made here: that Hopkins was on the title of the property, that he had $354,000 in cash in safe deposit boxes, that he owned a Ford pick-up truck and a Porsche Carrera, and that he had concealed his ownership in these vehicles. While the government may have succeeded in showing that Hopkins was a large-scale drug dealer, "[w]hat the [evidence] lacks . . . is a sufficient connection between the detailed narcotics activity and the particular assets targeted by the Government's forfeiture proceeding." United States v. $405,089.23 U.S. Currency, 122 F.3d 1285, 1290-91 (9th Cir. 1997); see also United States v. One 1986 Ford Pickup, 56 F.3d 1181, 1187 (9th Cir. 1995) (stating in dictum that forfeiture under 21 U.S.C. S 881(a)(6) requires "a showing of`probable cause for belief that a substantial connection exists between the property to be forfeited and the criminal activity' ") (quoting $5,644,540.00 in U.S. Currency, 799 F.2d at 1363); United States v. U.S. Currency, $30,060.00, 39 F.3d 1039, 1044 (9th Cir. 1994) ("[S]uspicions of general criminality are not enough . . . . [T]he government must have probable cause to believe that the money is connected specifically to drug activities.") (quoting United States v. $191,910 in U.S. Currency, 16 F.3d 1051, 1072 (9th Cir. 1994)) (emphasis added).
 
 
 14
 The government attempts to distinguish $405,089.23 U.S. Currency on the strength of the court's statement in that case that the evidence did not demonstrate that it was any more likely that the cash originated from the drug activity than that it originated from another legal or illegal source. See $405,089.23 U.S. Currency, 122 F.3d at 1290 n.4. Here, the government argues, the evidence showed that Hopkins lacked a legitimate source of income. But it requires too great a leap of logic to go from that assertion to the conclusion that it is more likely that the funds used to remodel the Dolorosa property originated from drug activity than from some other legal or illegal source, particularly considering that the Lowndeses were co-owners of the property and could have been a source of funds. Cf. U.S. Currency, $30,060.00, 39 F.3d at 1044 (claimant's lack of employment, lies, and possession of large sum of money standing alone are not probative of probable cause).
 
 
 15
 The government bears the burden of demonstrating that its position in opposing the appeal was substantially justified. See Meinhold v. United StatesDep't of Defense, 123 F.3d 1275, 1277 (9th Cir.), amended by 131 F.3d 842 (9th Cir. 1997). While "[t]he government's failure to prevail does not raise a presumption that its position was not substantially justified," Kali v. Bowen, 854 F.2d 329, 332 (9th Cir. 1988), it must demonstrate that its position had "a reasonable basis both in law and fact." Underwood, 487 U.S. at 565. For the reasons stated, we conclude that the government has failed to sustain the burden that its position that probable cause existed after the suppression of all of the documentary evidence and its opposition to claimants's appeal were substantially justified. The government is liable to claimants for fees under 28 U.S.C. S 2412(d)(1)(A).[2]
 
 B. The Section 2412(b) Claim
 
 16
 Claimants also moved for fees under S 2412(b), which provides that the government is liable for fees to the same extent as any other party under the common law. Claimants argue that because the government pursued the forfeiture in bad faith, they can recover market rate reimbursement for attorneys' fees (as opposed to the statutory rate, discussed below). See Mendenhall v. National Transp. Safety Bd. , 92 F.3d 871, 876 (9th Cir. 1996). Because there is no basis for a bad faith finding we reject claimants' S 2412(b) claim.
 
 III. AMOUNT OF FEE AWARD
 
 17
 Section 2412(d)(2) provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. S 2412(d)(2) (1994 & Supp. 1999). The government does not object to adjustment of the statutory rate to reflect the increase in the cost of living and we have previously held such adjustments proper. See, e.g., $12,248 U.S. Currency, 957 F.2d at1517 n.3 (citing Ramon-Sepulveda v. I.N.S., 863 F.2d 1458, 1464 (9th Cir. 1988)). According to Bureau of Labor Statistics Data, the Consumer Price Index has increased from 157.3 in March 1996 to 164.3 currently. Accordingly, the adjusted statutory rate is $130.56.
 
 
 18
 Claimants also contend that they should be awarded fees in excess of the statutory rate based on special factors, in particular the unique skills required for civil forfeiture actions. Three requirements must be met before the statutory rate can be exceeded on this ground: "First, the attorney must possess distinctive knowledge and skills developed through a practice specialty. Secondly, those distinctive skills must be needed in the litigation. Lastly, those skills must not be available elsewhere at the statutory rate." Love v. Reilly, 924 F.2d 1492, 1499 (9th Cir. 1991). Even assuming that expertise in defending civil forfeiture actions qualifies as a practice specialty requiring distinctive knowledge and skills, the second and third requirements have not been met here. This was a routine civil forfeiture case, not needing specialized skills. Cf. Pirus v. Bowen, 869 F.2d 536, 542 (9th Cir. 1989) (awarding fees in excess of statutorycap where specialized knowledge of a "highly complex area" of Social Security law was required in a class action that "was no routine disability case"). Furthermore, while claimants have submitted evidence that the market rates for similarly experienced counsel exceed the statutory rate, they have not demonstrated that no suitable counsel would have taken on claimants' case at the statutory rate.
 
 
 19
 Claimants are entitled to fees for those hours reasonably spent on their appeal on the merits and this fee litigation. See Love, 924 F.2d at 1497 (a prevailing party under the EAJA is automatically entitled to attorney's fees for any fee litigation if the government's position on the merits lacked substantial justification) (citing Commissioner v. Jean, 496 U.S. 154 (1990)). We have examined counsel's time records and find that the time expended by claimants' lead counsel, Paul Gabbert--129.65 hours--was reasonable, except that we will exclude as unnecessary the 13.1 hours spent on the untimely supplemental fee application for fees incurred in the district court See Hensley, 461 U.S. at 434 ("[E]xcessive, redundant, or otherwise unnecessary" hours should be excluded from the fee award.). Accordingly, Gabbert's compensable time totals 116.55 hours. The time expended by associate counsel, Mark Bernheim--138.4 hours--was reasonable. Applying the lodestar rate of $130.56 to the total of 254.95 hours results in a fee award of $33,286.27. In addition, claimants are entitled to recover printing and word processing costs incurred on appeal in the amount of $311.91.
 
 IV. CONCLUSION
 
 20
 The motion for an of award attorney's fees and other costs is GRANTED and claimants shall recover from the government the sum of $33,598.18.
 
 
 
 Notes:
 
 
 *
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.
 
 
 [1]
 The EAJA provides in relevant part:
 Except as otherwise specifically provided by statute, a court shall
 award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to sub-section (a), incurred by that party in any civil action (other than cases sounding in tort), . . . brought by or against the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.
 28 U.S.C. S 2412(d)(1)(A).
 
 
 [2]
 The government's lack of substantial justification for opposing claimants' appeal is compounded by its cross-appeal based on the contention that claimants lacked standing. As discussed in the merits opinion, the Fourth Amendment standing argument directed at the Lowndeses was barred because it was not raised below. See 22249 Dolorosa St., 167 F.3d at 512. The waiver argument directed at Hopkins, based on his election to contest the probable cause finding, was plainly without merit. See id. We need not, however, determine whether the litigation positions in the cross appeal lacked substantial justification because they were clearly ancillary to the fundamental position of the government with respect to the Dolorosa property--that it was subject to forfeiture under 21 U.S.C. S 881(a)(6) as proceeds traceable to drug transactions. See Commissioner v. Jean, 496 U.S. 154, 159 (1990) ("[O]nly one threshold determination [regarding whether the government's position was substantially justified] for the entire civil action is to be made.").