**UNITED STATES of America,**
**Plaintiff—Appellee,**

Lester Simmons, Claimant—Appellant,

and

Owlstone Asset Management, Inc.; Amerimax Business Management, Inc.; Newport Coast Trust; Viking Trust, Claimants,

v.

APPROXIMATELY $417,148.06 IN U.S. CURRENCY SEIZED FROM BANK OF AMERICA ACCOUNT NO. 08067–05302; Approximately $414,505.34 in U.S. Currency Seized from Bank of America Account No. 08060–06683; Approximately $1,100,317.70 in U.S. Currency Seized from Bank of America Account No. 08695–01088; Approximately $96,265.61 in U.S. Currency Seized from Wells Fargo Bank Account No. 0766–634851, Defendants.

No. 02–15891.

D.C. No. CV–99–02456–MLS(DAD).

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 2003.

Decided Aug. 4, 2003.

Before CANBY, KLEINFELD, and RAWLINSON, Circuit Judges.

### MEMORANDUM *

Lester Simmons, trustee, appeals a summary judgment decreeing forfeiture to the United States of funds nominally held by the Newport Coast Trust and the Viking Trust ("the Trusts"). The district court concluded that, because the Trusts were shams, they lacked standing to challenge the forfeiture. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.[1]

■ We reject Simmons' argument that he has standing as an individual claimant in this civil forfeiture proceeding. Simmons was not a party to the district court litigation. The amended claims filed in the district court listed the Trusts as claimants, and Simmons appeared only as a trustee of the Trusts. For his own tactical reasons, Simmons did not assert an individual ownership interest in the funds. Because Simmons is a nonparty, he does not have standing to appeal the decision of the district court unless (1) he participated in the proceedings below, and (2) the equities favor hearing the appeal. *See Citibank Int'l v. Collier–Traino, Inc.,* 809 F.2d 1438, 1441 (9th Cir.1987). Simmons meets neither requirement.

■ The notice of appeal was filed by Simmons as trustee of the Trusts, and it is therefore the Trusts, not Simmons individually, that are before us on this appeal. To have standing to challenge the forfeiture, the Trusts must allege an ownership or other interest in the forfeited property. *See United States v. $191,910.00 in U.S. Currency,* 16 F.3d 1051, 1057 (9th Cir. 1994). The Trusts, however, were merely sham structures by which Simmons controlled the funds in order to evade taxes. They were not created for the benefit of any third person, but solely for the benefit of Simmons himself. For example, the named settlor of the Viking Trust was unaware of its existence, and the corpus of the trust was used to purchase assets for Simmons. The Newport Coast Trust transferred its major asset to Simmons without consideration. As the district court noted, Simmons conceded that the Trusts were shams or alter egos for tax purposes.[2]

Because the Trusts were shams, they had no legally protectible interest in the funds at issue; bare legal title without dominion or control of the property is not enough. *See United States v. One Parcel of Land, Known as Lot 111–B,* 902 F.2d 1443, 1444 (9th Cir.1990). Lacking a "colorable claim" of possessory or ownership

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. We review de novo the district court's grant of summary judgment. *See United States v. Ranch Located in Young, Ariz.,* 50 F.3d 630, 632 (9th Cir.1995). Standing to contest a civil forfeiture action is a threshold issue that we also review de novo. *See United States v. Real Property Known as 22249 Dolorosa Street,* 167 F.3d 509, 511 (9th Cir.1999).

2. We reject Simmons' contention that *Hansen v. Bear Film Co.,* 28 Cal.2d 154, 168 P.2d 946 (1946), establishes the effectiveness of the Trusts for purposes of standing to challenge the forfeitures. *Hansen* merely gave effect within a family to a trust that may have been set up to save taxes; there was no finding that the trusts were established for fraudulent purposes. *See id.* at 169, 168 P.2d 946. Furthermore, even if a trust that was fraudulent toward third parties could be enforced among the parties to the trust, that fact certainly would not make the trust cognizable against the target of the fraud–here the United States.

interest, the Trusts have no standing to challenge the forfeiture of the funds. *See $191,910.00 in U.S. Currency,* 16 F.3d at 1058.[3]

The fact that the Trusts lack standing does not create standing in Simmons as an individual. Acts performed by a person in two different capacities are generally treated as transactions of two different legal personages. *See Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 543 n. 6, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (quoting F. James & G. Hazard, Civil Procedure §§ 11.6, p. 594 (3d ed.1985)). Simmons chose to litigate and appeal as a trustee of the Trusts, which he conceded to be shams, rather than as an individual claimant. The failure of this tactic does not breathe life into an individual claim that Simmons did not present to the district court or appeal to this court.

AFFIRMED.

KLEINFELD, Circuit Judge, dissenting.

KLEINFELD, Circuit Judge.

I respectfully dissent.

Like the majority, I reject Simmons's argument that he has standing as an individual to challenge the forfeiture of trust assets. His tactical decision to act in the district court only in his trustee capacity means he may not now appeal the judgment as an individual as he was not, individually, a party below.

Nevertheless, the trustee, as such, has standing (and a duty) to litigate on behalf of the beneficiaries. Though Simmons's purpose was to defraud the government of taxes owed, nevertheless he used unchallenged trust language to create a trust for designated beneficiaries (his children and grandchildren apparently), and deposited a res. It's their money now. "Where the purpose of the settlor in creating the trust is to defraud creditors or other persons, but the trust is created for the benefit of a third person and not for the benefit of the settlor himself, if the beneficiary at the time of the creation of the trust had no notice of the fraudulent purpose of the settlor, he can enforce the trust, provided that the trust is not illegal for any other reason."[1] The beneficiaries here have an interest in the money remaining in trust beyond Simmons's obligation to the government and Simmons, as trustee, has a duty to represent their interest.

Suppose, hypothetically that a trustor put $500,000 in trust for his children to evade $100,000 in taxes, which with penalties and interest became a $300,000 obligation to the government. The trustee would have standing and a duty to litigate to protect the children's $200,000. The effect of the fraudulent purpose is to enable the government to get $300,000 off the top, and (under paragraph 24 of Simmons's trust and under the law of trusts[2]) to subject the trustee to judicial removal, replacement and restitution. A guardian ad litem for the beneficiaries may be appropriate, if they are minors.

---

3. Although Simmons contends that *$191,910.00 in U.S. Currency* supports the Trusts' case, it does not. In *$191,910.00,* the claimant was in possession of the funds and asserted that he owned some of them and that the rest belonged to a client. *See id.* at 1058. He thus asserted a colorable claim of ownership and possessory interests, combined with physical possession. Here the sham Trusts admittedly exercised no dominion or control over the funds in issue, and had no claim of interest in the funds.

1. Restatement 2d of Trusts § 63(2), comment f.

2. *See, e.g.,* California Probate Code §§ 15642, 15660, 16004.