ORDER GRANTING MGNDICHIAN’S MOTION FOR ATTORNEYS’ FEES AND COSTS PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT
 

 MORROW, District Judge.
 

 The present case concerns the administrative forfeiture of several motorcycles originally belonging to petitioner. Petitioner filed a motion for return of the property. While Judge Hupp of this court denied that relief, he declared that the administrative forfeiture proceedings were a nullity, equitably tolled the time within which the Bureau of Alcohol, Tobacco and Firearms (“ATF”) could commence such proceedings, and authorized ATF to commence proper administrative forfeiture proceedings within sixty days of the date of his order. Petitioner has now moved for attorneys’ fees and costs pursuant to the Equal Access to Justice Act.
 

 I. FACTUAL AND PROCEDURAL BACKGROUND
 

 On May 19, 2000, the Bureau of Alcohol, Tobacco and Firearms seized the subject motorcycles during a search of Gerald Mgndichian’s (“Petitioner”) motorcycle shop at 10792 Lower Azusa Avenue, El Monte, California. Petitioner was arrested the same day and charged with conspiracy to violate 18 U.S.C. §§ 371, 511, and 2321. ATF Special Agent William Queen identified the motorcycles as having been stolen by members of the Mongol criminal motorcycle gang, having vehicle identification numbers that had been removed, and/or having been altered with aftermarket parts. Given the value of the motorcycles and the circumstances of their seizure, the ATF deemed them eligible for administrative forfeiture.
 

 Pursuant to 26 U.S.C. § 7325(2) and 27 C.F.R. § 72.22, the ATF was required to publish notice of the commencement of administrative forfeiture proceedings. It did so, and served written notice by mail on petitioner on August 22, 2000. The notice letters stated that a claim and cost bond had to be filed by September 21, 2000 (within thirty days of the date of first publication of the notice), that the bond had to be in the form of a certified cash
 
 *MCCXCVI
 
 ier’s check or other acceptable surety payable to ATF, and that, if petitioner lacked the financial means to post a bond, he could file a sworn affidavit setting forth the factual basis for his request that the bond requirement be waived.
 

 Petitioner’s claim, accompanied by an unsworn bond waiver request, was received on September 19, 2000. On March 30, 2001, ATF advised petitioner that his claim was insufficient, because he had failed to provide evidence of his inability to post a bond as instructed in the notice letters. The March 30 letter requested that petitioner provide a copy of his 1999 federal income tax return, that he complete an Application to Proceed in Forma Pauperis and that he sign an Authorization to Furnish Financial Information. It stated that the documents had to be received by ATF within thirty days of petitioner’s receipt of the letter to avoid summary forfeiture. Petitioner timely submitted the additional financial documentation on April 27, 2001.
 

 On or about December 4, 2001, ATF Special Agent John Ciccone telephoned petitioner to arrange for ATF auditor John DePasquale to review petitioner’s financial documentation. During the course of the conversation, petitioner told Ciccone that he had sent his attorney a check for the cost bond because his attorney was going on vacation. On December 18, 2001, ATF sent petitioner and his attorneys a letter stating that his in forma pauperis application had been denied, and that petitioner had fifteen days from receipt of the letter to submit a cost bond in order to avoid summary forfeiture. Petitioner signed a return receipt for the letter on December 21, 2001. The deadline for filing a cost bond was therefore January 5, 2002. On January 7, 2002, two days after the deadline, petitioner’s attorney mailed a personal cheek to ATF. ATF did not receive the check until January 9, 2002. On January 11, 2002, it advised petitioner’s attorney that he had missed the deadline for filing a cost bond, and that a personal check was not acceptable collateral for a cost bond under 27 C.F.R. § 72.25(a). The subject motorcycles were deemed abandoned to administrative forfeiture.
 

 On December 17, 2002, petitioner filed a motion for return of property. The motion was referred to Judge Harry L. Hupp for decision. After full briefing, Judge Hupp denied petitioner’s motion for return of property. He found, however, that “the administrative forfeiture proceedings were a nullity,” and that the “just result ... is not to order the motorcycles returned at this point, but to allow ATF within 60 days correctly to notice an administrative forfeiture proceeding, to allow petitioner to file his claim and a bond which satisfies ATF, [and] to allow the United States to correctly start a judicial foreclosure action, which petitioner may defend.” Administrative forfeiture proceedings against the subject motorcycles were recommenced on March 20, 2003.
 

 On June 2, 2003, petitioner filed the instant motion for attorneys’ fees and costs pursuant to the Equal Access to Justice Act (“EAJA”). The government filed opposition on June 30, 2003. Having reviewed the briefs and evidence presented by the parties, the court finds that petitioner is entitled to recover attorneys’ fees and costs incurred in connection with the prosecution of his motion for return of property.
 

 II. DISCUSSION
 

 A. Legal Standard For Attorneys’ Fees Under 28 U.S.C. § 2412
 

 Section 2412(d)(1)(A) provides:
 

 “Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United
 
 *MCCXCVII
 
 States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.” 28 U.S.C. § 2412(d)(1)(A).
 
 [1]
 

 The prerequisites for a fee award under § 2412(d)(1)(A) are: (1) the claimant must be a “prevailing party”; (2) the government’s position must not have been “substantially justified”; (3) there must be no “special circumstances [that make] make an award unjust”; and (4) a fee application must be submitted to the court within thirty days of final judgment in the action and be supported by an itemized statement.
 
 Commissioner, Immigration and Naturalization Service v. Jean,
 
 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990);
 
 Krecioch v. United States,
 
 316 F.3d 684, 687 (7th Cir.2003) (“To be eligible for a fee award under the EAJA, Krecioch must show: (1) that he was a ‘prevailing party’; (2) that the Government’s position was not ‘substantially justified’; (3) that no ‘special circumstances make an award unjust’; and (4) that any fee application be submitted to the court within 30 days of final judgment in the action and be supported by an itemized statement”);
 
 Perales v. Casillas,
 
 950 F.2d 1066, 1072 (5th Cir.1992) (“Eligibility for a fee award under the EAJA requires, at a minimum, that the claimant be a ‘prevailing party’; that the Government’s position was not ‘substantially justified’; that no ‘special circumstances make an award unjust’; and that any fee application be submitted to the court within 30 days of final judgment and be supported by an itemized statement”).
 

 “The party seeking fees has the burden of establishing its eligibility.”
 
 Love v. Reilly,
 
 924 F.2d 1492, 1494 (9th Cir.1991). A plaintiff may satisfy the second and third prongs of the test, however, simply by alleging that the government’s position was not substantially justified and that no special circumstances exist that make an award unjust. The government then has the burden of proving that its actions were substantially justified in law and in fact and/or that special circumstances make awarding fees unjust.
 
 Id.
 
 at 1495 (“The burden of proving the special circumstances or substantial justification exception to the mandatory award of fees under the EAJA rests with the government”);
 
 Oregon Environmental Council v. Kunzman,
 
 817 F.2d 484, 498 (9th Cir.1987) (“the government bears the burden of showing that its position was substantially justified”).
 

 B. Whether Petitioner Is Entitled To Attorneys’ Fees And Costs Under 28 U.S.C. § 2412
 

 1. “Prevailing Party”
 

 A plaintiff or petitioner is deemed the “prevailing party” if, as a result of a
 

 
 *MCCXCVIII
 
 judgment or consent decree entered in the legal action he or she brought, there is a “material alteration of the legal relationship of the parties.”
 
 Buckhannon Board, and Care Home, Inc. v. West Virginia Department of Health and Human Resources,
 
 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001);
 
 Miles v. State of California,
 
 320 F.3d 986, 989 (9th Cir.2003) (“The Supreme Court has squarely held that there is a ‘prevailing party’ when there has been a ‘material alteration of the legal relationship of the parties,’ ” quoting
 
 Buckhannon, supra,
 
 532 U.S. at 604, 121 S.Ct. 1835);
 
 id.
 
 at 989, n. 3 (“The Court specifically identified two instances in which a plaintiff can be considered a ‘prevailing party’: (1) an enforceable judgment on the merits; or (2) an enforceable court-ordered consent decree”).
 

 Voluntary action by the defendant that is not compelled by a judgment or consent decree does not constitute a “material alteration” in the parties’ legal relationship sufficient to support a fee award under
 
 Buckhannon. Buckhannon, supra,
 
 532 U.S. at 605, 121 S.Ct. 1835 (“A defendant’s voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change”);
 
 Watson v. County of Riverside,
 
 300 F.3d 1092, 1096 (9th Cir.2002)
 
 (“Buckhannon
 
 holds that to be considered a prevailing party, one must have obtained a ‘judicial imprimatur’ that alters the legal relationship of the parties, such as a judgment on the merits or a court-ordered consent decree; it is not enough merely to have been a ‘catalyst’ in causing a voluntary change in the defendant’s conduct”).
 

 The Ninth Circuit has applied the
 
 Buck-hannon
 
 rule to applications for fees and costs under the EAJA.
 
 United States v. Campbell,
 
 291 F.3d 1169, 1172 (9th Cir.2002) (“In
 
 Perez-Arellano v. Smith,
 
 we adopted the Supreme Court’s standard in
 
 Buckhannon,
 
 ruling that a ‘prevailing party’ under the Equal Access to Justice Act (EAJA) ‘must be one who has gained by judgment or consent decree a “material alteration of the legal relationship of the parties,’ ”) quoting
 
 Perez-Arellano v. Smith,
 
 279 F.3d 791, 793 (9th Cir.2002) (“It might be argued that the Supreme Court’s
 
 Buckhannon
 
 decision should be viewed as binding precedent only with respect to the statutes there in issue, the FHAA and the ADA, each of which provides attorney’s fees for a ‘prevailing party’ who makes a claim under it.... However, under the circumstances presented here, we discern no reason to interpret the EAJA inconsistently with the Supreme Court’s interpretation of ‘prevailing party’ in the FHAA and the ADA as explained in
 
 Buckhannon.
 
 We therefore hold that a ‘prevailing party’ under the EAJA must be one who has gained by judgment or consent decree a ‘material alteration of the legal relationship of the parties’ ”).
 

 Here, the government argues that mov-ant cannot be deemed the “prevailing party” under
 
 Buckhannon
 
 because there was no final judgment entered in this case and because there was no “material alteration” in the parties’ legal relationship. The court evaluates each argument in turn.
 

 a. Whether Judge Hupp’s Order Constitutes A Final Judgment
 
 [2]
 

 The government first contends that petitioner cannot be deemed the prevailing
 
 *MCCXCIX
 
 party because no final judgment has been entered in this case. Rule 58 of the Federal Rules of Civil Procedure, titled “Entry of Judgment,” provides in pertinent part as follows:
 

 “Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a).” Fed.R.Civ.PROC. 58.
 

 Rule 79(a) sets forth the requirements for entry of items in the civil docket. The relevant portion states as follows:
 

 “All papers filed with the clerk, all process issued and returns made thereon, all appearances, orders, verdicts, and judgments shall be entered chronologically in the civil docket on the folio assigned to the action and shall be marked with its file number. These entries shall be brief but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court and of the returns showing execution of process. The entry of an order or judgment shall show the date the entry is made.” Fed.R.Civ.PROC. 79(a).
 

 “The two rules go hand in hand: Rule 58 tells the parties what types of documents constitute judgment, and Rule 79(a) tells the parties how the clerk must enter those documents on the civil docket. Only when both rules are satisfied is there an ‘entry of judgment.’ ”
 
 Radio Television Espanola S.A. v. New World
 
 Entertainment,
 
 Ltd.,
 
 183 F.3d 922, 930 (9th Cir.1999). See also Fed.R.Civ.PROC. 58 (“A judgment is effective only when so set forth [according to Rule 58] and when entered as provided in Rule 79(a)”);
 
 Knevelbaard Dairies v. Kraft Foods, Inc.,
 
 232 F.3d 979, 996 (9th Cir.2000) (Paez, J., dissenting) (“ ‘The lack of a final written judgment entered by the clerk of the district court is not a technicality. A final written judgment is an indication to the parties and to this court that the district court considers its task completed,’ ” quoting
 
 Wood v. Coast Frame Supply, Inc.,
 
 779 F.2d 1441, 1442-43 (9th Cir.1986)).
 

 Local Rule 58 further defines the term “entry of judgment” for purposes of proceedings in this district. It provides, in relevant part, that
 

 “[n]otation in the civil docket of entry of a memorandum of decision, an opinion of the Court, or a minute order of the Clerk shall not constitute entry of judgment pursuant to F.R.Civ.P. 58 and 79(a) unless specifically ordered by the judge.” CA CD L.R. 58-6.
 

 “The Local Rule is therefore a clarification of Rule 58 and furthers the separate document requirement by stating that memorandums of decision, opinions, and minute orders will not satisfy the requirements of Rule 58, even when entered into the civil docket.”
 
 Radio Television, supra,
 
 183 F.3d at 930. The local rule creates an exception, however, validated by the Ninth Circuit, which allows Central District judge to designate an order or opinion as the entry of judgment in a case by specifically and affirmatively ordering that the “notation in the civil docket” of the order shall “constitute entry of judgment pursuant to F.R.Civ.P. 58 and 79(a).”
 
 Radio Television, supra,
 
 183 F.3d at 930 (“The local rule provides an exception, whereby a Central District judge may use such documents to constitute entry of judgment under Rule 58 if the judge specifically and affirmatively orders that ‘notation in the civil docket’ of such a document shall ‘constitute entry of judgment pursuant to F.R.Civ.P. 58 and 79(a).’ Said another way, the clerk’s act of entering a minute order^ — even a minute order that would satisfy the separate document requirement — can not effect an entry of judgment unless the district court judge specifically orders it to be so”).
 

 
 *MCCC
 
 Applying these rules to the instant case, the court finds that Judge Hupp’s order was a final judgment. Judge Hupp’s order stated: “This is a final order disposing of this action; accordingly, this minute order is signed by the court.” Judge Hupp affixed his signature below this statement.
 
 [3]
 
 Although Judge Hupp could specifically have used the words “entry of judgment,” and cited the federal and local rules, the intent of his order is clear. Judge Hupp intended to enter a final order and judgment in the case. Therefore, it cannot be said that “nothing was done by the court ... which can be said to constitute entry of judgment.”
 
 Wood, supra,
 
 779 F.2d at 1442 (quoting
 
 Pure Oil Co. v. Boyne,
 
 370 F.2d 121, 122-23 (5th Cir.1966)).
 
 [4]
 
 Accordingly, the court finds that Judge Hupp’s order constituted a final judgment for purposes of the instant motion.
 
 [5]
 

 b. Whether Judge Hupp’s Order Effected A “Material Alteration” In The Parties’ Legal Relationship
 

 The government next argues that Judge Hupp’s order did not effect a “material alteration” in the parties’ legal relationship. It asserts that, although petitioner sought the return of his motorcycles, Judge Hupp did not order the motorcycles returned. Rather, he allowed the government to re-initiate administrative forfeiture proceedings, and give notice of the new proceedings.
 
 *MCCCI
 
 Since petitioner did not obtain the relief he sought in filing the motion, the government contends that the court cannot find there was a “material alteration” in the parties’ legal relationship. The court disagrees.
 

 Although Judge Hupp denied petitioner’s motion for an order directing the return of the motorcycles, he declared that the ATF’s administrative forfeiture of the property was void. To retain possession of the motorcycles, therefore, the ATF was required to renotice administrative forfeiture proceedings, affording petitioner another opportunity to file a claim, post a cost bond and compel the initiation of a judicial forfeiture action. The order clearly altered the parties’ legal relationship in a material way, since, prior to entry of the order, ATF took the position that the administrative forfeiture was valid, and that petitioner had no right to contest it in a judicial proceeding. While petitioner did not obtain all of the relief he sought because Judge Hupp did not order return of the motorcycles, he did secure a significant legal victory because Judge Hupp’s order gave him the opportunity to contest a forfeiture that would otherwise have been final and incontestable. See
 
 Buckhannon, supra,
 
 532 U.S. at 603, 121 S.Ct. 1835 (“This view that a ‘prevailing party’ is one who has been awarded
 
 some
 
 relief by the court can be distilled from our prior cases” (emphasis added));
 
 United States v. Real Property Known as 22249 Dolorosa Street, Woodland Hills, California,
 
 190 F.3d 977, 981-82 (9th Cir.1999) (“While the EAJA contains no applicable definition of ‘prevailing party,’ we consider claimants “ ‘prevailing parties for attorney’s fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.’ ” ... The government argues that claimants are not prevailing parties because, viewing the civil forfeiture action as a whole, they ultimately prevailed as to only 28.7% of the total value of the defendant properties in the original complaint, ... There is no requirement that success be measured by comparison of the value of the respective properties. Forfeiture of the Dolorosa property was a ‘significant issue’ even if its monetary value was less than that of the property forfeited,” quoting
 
 National Wildlife Federation v. Federal Energy Regulatory Commission,
 
 870 F.2d 542, 544 (9th Cir.1989) and
 
 Hensley v. Eckerhart,
 
 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).
 

 The government does not dispute that Judge Hupp’s order granted petitioner at least some of the relief he sought. Rather, it cites three recent orders by judges of this court that it contends support its argument that the parties’ legal relationship was not materially altered. The government’s reliance on these cases is misplaced. Two of the orders denying requests for attorneys’ fees were decided pursuant to the Civil Asset Forfeiture Reform Act of 2000 (“CAFRA”).
 
 [6]
 
 As Judge Hupp noted at the hearing on petitioner’s motion for return of property, the seizure in this case took place on May 19, 2000, and is not subject to CAFRA, which applies only to seizures on or after August 23, 2000. CAFRA contains an attorneys’ fees provision, and it was this provision, rather than the EAJA, that the two orders interpreted and addressed. Moreover, the factual circumstances of the cases are distinct from circumstances in the instant action. In each case, after effecting an administrative forfeiture, the government failed to initiate a judicial forfeiture action within the time period prescribed by CAF-RA, and thereafter returned the property to the claimant. Here, prior to the entry of Judge Hupp’s order, the government
 
 *MCCCII
 
 took the position that petitioner’s motorcycles had been administratively forfeited, and that he had no recourse. The orders are thus of little, if any, value in deciding the instant case.
 

 The government cites a third case, however, that is factually more apposite. In
 
 In re Seizure of $84,028.00 in U.S. Currency by the Inglewood Police Department,
 
 CV 02-7417 GHK (JTLx), Judge King concluded that an order entered by Judge Hupp, which allowed the government to renotice forfeiture proceedings, did not materially alter the parties’ legal relationship.
 
 [7]
 
 Unlike the present case, however, the government in
 
 In re Seizure of $84,028.00
 
 had not administratively forfeited the property at issue prior to the time Judge Hupp ruled on the motion for return of property.
 
 [8]
 
 As such, once Judge Hupp denied the movant’s motion for return of property, movant was in the same position he was in when he moved the court to return his property. Here, by contrast, the government had already declared forfeit the property at issue and took the position that petitioner could not secure its return. Accordingly, the analysis set forth in Judge King’s order addresses a fact situation that is distinct from that presented by this case.
 

 The government proffers no other authority in support of its argument that there was no material alteration in the parties’ legal relationship. Because Judge Hupp’s order the government’s administrative forfeiture a “nullity,” it effected a material alteration in the parties’ legal relationship. Following entry of Judge Hupp’s order, the government had either to return the motorcycles to petitioner or re-notice administrative forfeiture proceedings, affording petitioner another opportunity to file a claim, post a cost bond, and compel the initiation of judicial forfeiture proceedings. This clearly altered the parties’ legal relationship since, prior to that time, the government took the position that the administrative forfeiture was valid, and that petitioner had no right to contest the forfeiture in a judicial proceeding. Since there was both a material alteration in the parties’ legal relationship and a final judgment, the court finds that petitioner was the prevailing party for purposes of the EAJA.
 
 [9]
 

 2. “Substantially Justified”
 

 The court must thus examine whether the government’s position was substantially justified. In making this determination, the court must consider the totality of circumstances both prior to and during litigation.
 
 Abela v. Gustafson,
 
 888 F.2d 1258, 1264 (9th Cir.1989). See also
 
 Marolf supra,
 
 277 F.3d at 1161 (“ ‘Thus we must focus on two questions: first, whether the government was substantially justified in taking its original action; and, second, whether the government was substantially justified in defending the validity of the action in court.’ ... To prevail here, the government must establish that it was substantially justified on the whole, considering, first, the taking of the Asmara through administrative forfeiture without notice, and, second, continuing to pursue the forfeiture notwithstanding defective
 
 *MCCCIII
 
 notice and expiration of the limitations period”);
 
 Kali v. Bowen,
 
 854 F.2d 829, 332 (9th Cir.1988) (“ ‘In analyzing the reasonableness of the government’s position under the “totality of the circumstances” test, we must look both to the position asserted by the government in the trial court as well as the nature of the underlying government action at issue,’ ” quoting
 
 League of Women Voters of California v. FCC,
 
 798 F.2d 1255, 1258 (9th Cir.1986)). In
 
 Kali
 
 the court noted that “[t]he inquiry into the nature of the underlying government action will by definition concern only the merits of that action,” while “[t]he inquiry into the government’s position at trial will encompass” the merits of the underlying action “to the extent ... the government chooses to defend” it, as well as “extraneous circumstances bearing upon the reasonableness of the government’s decision to” litigate.
 
 Kali supra,
 
 854 F.2d at 332.
 

 To be substantially justified, “the government’s position must have a reasonable basis in law and fact.”
 
 Corbin v. Apfel,
 
 149 F.3d 1051, 1052 (9th Cir.1998) (citing
 
 Pierce v. Underwood,
 
 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). “[A] position can be justified even though it is not correct, and ... it can be substantially (i.e., for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.”
 
 Pierce, supra,
 
 487 U.S. at 566, n. 2, 108 S.Ct. 2541. “ ‘The government’s position must be “substantially justified” at “each stage of the proceedings.’ ”
 
 Corbin, supra,
 
 149 F.3d at 1052 (quoting
 
 Williams v. Bowen,
 
 966 F.2d 1259, 1261 (9th Cir.1991)).
 

 “That the government lost does not raise a presumption that its position was not substantially justified.”
 
 Kunzman, supra,
 
 817 F.2d at 498. Additionally, that an agency acted contrary to law does not necessarily mean that it lacked substantial justification for the position it took.
 
 Kali v. Bowen,
 
 854 F.2d 329, 333 (9th Cir.1988).
 

 In the present case, petitioner seeks fees for the period from October 2002, when present counsel was retained, to the present. This encompasses a brief period of negotiation and litigation of this action commencing in December 2002. Petitioner argues that the government’s refusal to rescind the administrative forfeiture, and its defense of this action were not substantially justified given the numerous errors made by the government in the forfeiture process. The court agrees. Judge Hupp found that the ATF made the following clear errors in attempting to forfeit the motorcycles administratively: (1) the agency’s notice incorrectly stated that the basis for the forfeiture was violation of 49 U.S.C. § 11, a statute that had been repealed six years earlier; (2) the ATF erroneously referred the matter to the United States Attorney for the Southern District of California, despite the fact that the seizure took place in the Central District; (3) in October 2000, ATF sent a notice to petitioner implying, but not stating, that judicial forfeiture proceedings would be commenced; (4) following this notice, and an inexplicable delay of almost six months, ATF advised petitioner on March 30, 2001, that it would not waive the filing of a cost bond because he had not adequately demonstrated inability to post a bond; (5) after another inexplicable delay, ATF informed petitioner that his request for a waiver of the cost bond requirement had been denied, and that he had fifteen days to post the bond or administrative forfeiture would take place; and (6) there was no legal authority for the imposition of this fifteen day time limit. Particularly in light of the Ninth Circuit’s decision in
 
 Marolf
 
 which held that giving constitutionally defective notice to a claimant voids an administrative forfeiture
 
 *MCCCIV
 

 CUnited States v. Marolf,
 
 173 F.3d 1213, 1216 (9th Cir.1999) (“We therefore affirm the district court’s ruling that a constitutionally deficient notice of forfeiture renders such a forfeiture void”)), these errors demonstrate that the government did not have a substantial justification for defending the case.
 

 The government argues that because Judge Hupp found that it acted in good faith “to position the case for a court forfeiture action,” it necessarily had substantial justification for defending against petitioner’s action as it did. The court cannot agree. The court does not take issue with Judge Hupp’s finding that the parties acted in good faith. Good faith alone, however, does not demonstrate that the government’s decision to deny petitioner’s claim and litigate the case was substantially justified.
 
 Taylor v. United States,
 
 815 F.2d 249, 254 (3d Cir.1987) (Becker, J., concurring) (“... we are not denying attorney’s fees because of the government’s good faith. Good faith or laudatory motives are not a defense to an EAJA claim”);
 
 Truckers United for Safety v. Mead,
 
 201 F.Supp.2d 52, 56 (D.D.C.2002) (“... the Government’s arguments that its ‘good faith belief equates to substantial justification of its actions and that the decisions of other courts provide substantial justification are without merit”), rev’d. on other grounds, 329 F.3d 891 (D.C.Cir.2003). Cf.
 
 Pierce, supra,
 
 487 U.S. at 563, 108 S.Ct. 2541 (“to be ‘substantially justified’ means, of course, more than merely undeserving of sanctions for frivolousness”).
 

 Moreover, even if good faith alone were sufficient to support a finding that the government’s position was substantially justified, Judge Hupp’s good faith analysis was expressly limited to the time period prior to filing of the instant litigation. Judge Hupp’s ruling depended, in part, on his conclusion that the government could have taken corrective action had the defects in the original notice of forfeiture been brought to its attention.
 
 [10]
 
 It follows that, once petitioner brought the errors to the government’s attention in October 2002, the government should have renot-iced the proceedings and given petitioner another opportunity to file a claim and cost bond. The government did not do so, however. Rather than acknowledging its errors, and renoticing the forfeiture proceedings, the government chose to assert that the motorcycles had been administratively forfeited, and to defend against petitioner’s Rule 41(g) motion. The government offers no explanation for these decisions, and does not attempt to demonstrate that they were substantially justified. Therefore, even if good faith were sufficient to demonstrate substantial justification, the court cannot find that the government acted in good faith by deciding to defend against petitioner’s Rule 41(g) motion. See
 
 United States v. $12,248 U.S. Currency,
 
 957 F.2d 1513, 1518 (9th Cir.1991) (affirming an EAJA fee award because, despite an earlier determination of probable cause, the government’s poor investigation of claimant’s case and unreasonable delay in pursuing the forfeiture action demonstrated that
 
 *MCCCV
 
 the government’s position was not substantially justified).
 

 In sum, after carefully examining the merits of the government’s case and the totality of the circumstances surrounding the case, therefore, the court finds that the government’s decision to litigate this case was not substantially justified.
 

 3. “Special Circumstances”
 

 The court may also decline to award petitioner attorneys’ fees if it finds that “special circumstances make an award unjust.” See 28 U.S.C. § 2412(d)(1)(A). The Ninth Circuit has held that special circumstances are present where the government makes an argument for “a novel but credible extension or interpretation of the law”
 
 (Hoang Ha v. Schweiker,
 
 707 F.2d 1104, 1106 (9th Cir.1983)), where its action concerns an issue on which “reasonable minds could differ”
 
 (League of Women Voters, supra,
 
 798 F.2d at 1260), or where it involves an “important and doubtful question”
 
 Minor v. United States,
 
 797 F.2d 738, 739 (9th Cir.1986).
 
 [11]
 
 The government does not argue that “special circumstances” make an award of fees unjust in this case. Accordingly, the court need not address the issue.
 

 4. Conclusion Regarding Entitlement To Fees
 

 Because petitioner prevailed on a significant issue in the litigation, i.e., the validity of ATF’s administrative forfeiture, because ATF’s decision to assert in litigation that the forfeiture was valid was not substantially justified, and because petitioner’s fee application was timely filed, petitioner is entitled to recover attorneys’ fees under the EAJA. The court thus turns to the amount of the fee award.
 

 C. The Amount Of Fees
 

 In
 
 Pierce, supra,
 
 487 U.S. at 552, 108 S.Ct. 2541, the Supreme Court observed that
 

 “the EAJA provides that attorney’s fees ‘shall be based upon prevailing market rates for the kind and quality of the services furnished,’ but ‘shall not be awarded in excess of [$125] per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.’ ”
 
 Id.
 
 at 571, 108 S.Ct. 2541 (citing 28 U.S.C. § 2412(d)(2)(A)).
 
 [12]
 

 Addressing the statutory reference to “a special factor,” the Court held that “the ‘special factor’ formulation suggests Congress thought that [$125] an hour was generally quite enough public reimbursement for lawyers’ fees....”
 
 Id.
 
 at 572, 108 S.Ct. 2541. Thus, special factors cannot be “of broad and general application.... The ‘novelty and difficulty of issues,’ ‘the undesirability of the case,’ and ‘the work and ability of counsel,’ and ‘the results obtained’ are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are.”
 
 Id.
 
 at 573, 108 S.Ct. 2541. Similarly, “local or national market” rates, the “general legal competence” of counsel, and customary fees and awards are not special factors. See
 
 id.
 
 at 572-73, 108 S.Ct. 2541. Instead, the Court stated, the statute’s reference to “the limited availability of qualified attorneys for the proceedings involved” means “attorneys having some distinctive knowledge or specialized skill needful for the litigation in question,” e.g., attorneys who have “an identifiable practice specialty such as pat
 
 *MCCCVI
 
 ent law, or knowledge of foreign law or language.”
 
 Id.
 
 at 573, 108 S.Ct. 2541.
 

 Petitioner proffers a number of reasons why the 'court should award fees greater than that statutory rate. First, he asserts that “in Los Angeles, in 2003, the prevailing market rates are from $250-$500 per hour. Accordingly, at a minimum, the statutory rate should be increased to $250 and $350, respectively, based on prevailing market conditions.”
 
 [13]
 
 As noted,
 
 Pierce
 
 rejected just such a “local market rate” argument.
 
 Id.
 
 at 572, 108 S.Ct. 2541 (“To the contrary, the ‘special factor’ formulation suggests Congress thought that [$125] an hour was generally quite enough public reimbursement for lawyers’ fees, whatever the local or national market might be”).
 

 Petitioner next argues that the time and labor required, the time limitations imposed, and thé nature and length of his professional relationship with counsel weigh in favor of an upward adjustment of the fee amount.
 
 Pierce
 
 expressly held that the court may not rely on factors applicable to a broad spectrum of litigation as justification for increasing the statutory rate.
 
 Id.
 
 at 573, 108 S.Ct. 2541. The circumstances cited by petitioner are clearly broad and general in application and do not justify an increase in the hourly fee rate.
 

 Finally, petitioner argues that the skill and expertise required of counsel in the instant forfeiture case justify an upward adjustment of the fee rate. As noted,
 
 Pierce
 
 held that an attorney’s “distinctive knowledge or specialized skill” may justify an increase in rate.
 
 Id.
 
 The Ninth Circuit has stated that three requirements must be met before higher fees can be awarded on this basis: “First, the attorney must possess distinctive knowledge and skills developed through a practice specialty. Secondly, those distinctive skills must be needed in the litigation. Lastly, those skills must not be available elsewhere at the statutory rate.”
 
 Real Property Known as 22249 Dolorosa Street, Woodland Hills, Cal., supra,
 
 190 F.3d at 984 (citing
 
 Love v. Reilly,
 
 924 F.2d 1492, 1496 (9th Cir.1991)). The
 
 Dolorosa Street
 
 court assumed, without deciding, that “expertise in defending civil forfeiture actions qualifies as a practice specialty requiring distinctive knowledge and skills.”
 
 Id.
 
 at 984.
 
 [14]
 
 It concluded, however, that claimants had not demonstrated that the action was other than a “routine civil forfeiture case” and thus that it did not require specialized skills.
 
 Id.
 
 The court also held that claimants had not shown that “no suitable counsel would have taken on claimants’ case at the statutory rate.”
 
 Id.
 
 at 985. Accordingly, it denied claimants’ request that fees be awarded at greater than the statutory rate.
 

 The court concludes that expertise in civil forfeiture actions qualifies as a practice specialty requiring distinctive knowledge and skills. Certainly, petitioner has presented evidence that his attorneys specialize in the area, and that, as a result of their specialization, they possess knowledge, skill and expertise in civil forfeiture law.
 
 [15]
 
 Compare
 
 United States v.
 
 
 *MCCCVII
 

 Eleven Vehicles,
 
 937 F.Supp. 1143, 1155 (E.D.Pa.1996) (declining to increase fees in a forfeiture action above the statutory rate because “unlike the attorneys with ‘distinctive knowledge’ or ‘specialized skill’ mentioned in
 
 Pierce,
 
 Mr. Ivy has acknowledged that he ‘had no knowledge of or experience in civil in rem forfeiture law until early October 1992, when [he] began work on this case’ ”).
 

 The question is whether petitioner has presented sufficient evidence that his attorneys’ expertise and skills were required in the instant litigation and that the necessary expertise was not available at the statutory rate. Petitioner’s lawyers assert that this was “the single most difficult application for return of property [among the hundreds] that [they] have prepared.”
 
 [16]
 
 While the court cannot judge the accuracy of this statement, it does find, based on its own experience handling civil forfeiture actions, that this was anything but a “routine civil forfeiture case.”
 
 Dolorosa Street, supra,
 
 190 F.3d at 984. Expertise in the forfeiture area was clearly needed to unravel the procedural history of the ATF’s administrative forfeiture, and to determine that the ATF was relying on a repealed statute as the basis for forfeiture, and asserting time limits for the filing of a cost bond that had no statutory or regulatory basis. Petitioner has also proffered evidence that the skills his lawyers brought to bear on the litigation are not generally available in the Los Angeles area at the statutory EAJA rate.
 
 [17]
 
 The government has adduced no contrary evidence, and the record is thus undisputed in this regard. Applying the standard set forth in
 
 Pierce
 
 and
 
 Dolorosa Street,
 
 therefore, the court concludes that petitioner is entitled to an award of fees above the statutory rate.
 

 Gabbert declares that his standard billing rate in federal forfeiture cases is $350 to $400,
 
 [18]
 
 while Bernheim declares that his rate varies from $150 to $250 per hour.
 
 [19]
 
 The government once again proffers no contrary evidence. Accordingly, the court finds that petitioner may properly recover attorneys’ fees at $350 per hour for work done by Gabbert and $150 per hour for work done by Bernheim.
 

 The final step is to multiply the fee by the number of hours expended on the ease. Petitioner has presented evidence that his attorneys, Paul Gabbert and Mark Bern-heim, spent 102.5 and 103.1 hours respectively litigating the case.
 
 [20]
 
 After reviewing the billing summaries submitted, the
 
 *MCCCVIII
 
 court finds the hours recorded to be reasonable. The government does not argue to the contrary. Accordingly, petitioner is awarded a total of $51,350 in attorneys’ fees, comprised of $35,875 for work done by Gabbert and $15,465 for work done by Bernheim.
 

 D. The Amount Of Costs
 

 Petitioner also requests that the court tax certain costs to the government. As noted, the EAJA allows for the recovery of both fees and costs. The statute states, in relevant part, that “a court shall award to a prevailing party other than the United States fees and other expenses....” 28 U.S.C. § 2412(d)(1)(A). Petitioner seeks $1,034.51 for filing fees, Westlaw charges, transcripts, photocopies, faxes, messenger service and postage. These amounts are reasonable and recoverable.
 
 Jean v. Nelson,
 
 863 F.2d 759, 778 (11th Cir.1988) (“[W]e reject the government’s argument that telephone, reasonable travel, postage, and computerized research expenses are not compensable under the EAJA”);
 
 Aston v. Secretary of Health and Human Services,
 
 808 F.2d 9, 12 (2d Cir.1986) (affirming an award of telephone, postage, travel and photocopying expenses);
 
 International Woodworkers of America v. Donovan,
 
 792 F.2d 762, 767 (9th Cir.1985) (expenses routinely billed to a client — telephone, air courier, attorney travel — are recoverable under the EAJA);
 
 United States v. Hitachi America, Ltd.,
 
 101 F.Supp.2d 830, 833, 838 (C.I.T.2000) (awarding costs under the EAJA,
 
 inter alia,
 
 for deposition, pretrial and trial transcripts).
 

 Petitioner also seeks $3,960 for paralegal services (39.6 hours at $100 per hour). The court also finds that this amount is properly allowed under the EAJA.
 
 Krecioch, supra,
 
 316 F.3d at 687 (“Fees for work done by paralegals can be awarded under the fee-shifting provision of the EAJA,” citing
 
 Hirschey v. F.E.R.C.,
 
 777 F.2d 1, 6 (D.C.Cir.1985));
 
 Cook v. Brown,
 
 68 F.3d 447, 453 (Fed.Cir.1995) (“The Supreme Court, and lower courts, have approved the inclusion of fees for paralegals, law clerks, and law students, in fee awards under EAJA or analogous fee-shifting statutes, on the theory that their work contributed to their supervising attorney’s work product, was traditionally done and billed by attorneys, and could be done effectively by nonattorneys under supervision for a lower rate, thereby lowering overall litigation costs”). Thus, petitioner is entitled to recover total costs of $4,994.51.
 

 III. CONCLUSION
 

 For the foregoing reasons, the court grants petitioner’s motion for attorneys’ fees pursuant to the EAJA. Petitioner is awarded attorneys’ fees in the sum of $51,350 and costs in the amount of $4,994.51, for a total award of $56,344.51. The government is directed to pay this sum to petitioner on or before November 20, 2003.
 

 [1]
 

 . The EAJA fee provision has been applied to motions for return of property such as that petitioner brought here. See, e.g.,
 
 United States v. Marolf,
 
 277 F.3d 1156, 1164 (9th Cir.2002) (holding that EAJA fees should be awarded in connection with a Rule 41(e) motion for the return of property filed after the government administratively forfeited property without notice and the statute of limitations on a judicial forfeiture action had run);
 
 Purcell v. United States,
 
 908 F.2d 434, 437-38 (9th Cir.1990) (holding that EAJA fees could be sought in connection with a successful pre-indictment Rule 41(e) motion for the return of seized property and remanding to the district court to determine if the government’s position was substantially justified).
 

 [2]
 

 . The court accepts and considers part of the record on this motion the Supplemental Declaration of Michele C. Marchand, with attached exhibits, which was submitted on the day of the hearing. It further grants petitioner’s two
 
 ex parte
 
 applications for leave to file a rejoinder to Marchand’s declaration, and considers the substance of those pleadings as well.
 

 [3]
 

 . See March 10, 2003 Order at 5 ("This is a final order disposing of this action”).
 

 [4]
 

 . The government cites a recent order by Judge George H. King denying attorneys' fees in
 
 In re Seizure of $84,028.00 in U.S. Currency,
 
 CV 02-7417 GHK (JTLx), as evidence that no final judgment has been entered in this case. The
 
 In re Seizure of $84,028.00
 
 case is distinguishable. There, Judge King found that an order entered by Judge Hupp allowing the government to renotice forfeiture proceedings did not constitute the "entry of judgment” under Local Rule 58-6. (See Supplemental Declaration of Michele C. Marchand ("Supp. Marchand Dec!.”), Ex. 37 at 2.) Judge Hupp's order in
 
 In re Seizure of $84,028.00,
 
 however, did not state that it was final or that it "disposed of the action.” (See Petitioner's Rejoinder to Respondent's Response to Movant's Reply, Ex. 40 at 3.) Unlike this case, therefore, Judge Hupp did not demonstrate any intention to issue a final judgment
 
 In re Seizure of $84,028.00.
 

 [5]
 

 . Even if it were to find that Judge Hupp's order did not constitute the “entry of judgment,” the court would enter judgment
 
 nunc pro tunc
 
 effective March 10, 2003. Federal courts have generally held that when a judgment is not properly entered, a court may issue a
 
 nunc pro tunc
 
 judgment retroactive to the date of the original order. See, e.g.,
 
 United States v. Sumner,
 
 226 F.3d 1005, 1009-10 (9th Cir.2000) ("
 
 ‘Nunc pro tunc
 
 amendments are permitted primarily so that errors in the record may be corrected. The power to amend
 
 nunc pro tunc
 
 is a limited one, and may be used only where necessaiy to correct a clear mistake and prevent injustice.’ It does not imply the ability to alter the substance of that which actually transpired or to backdate events to serve some other purpose. Rather, its use is limited to making the record reflect what the district court actually intended to do at an earlier date, but which it did not sufficiently express or did not accomplish due to some error or inadvertence,” quoting
 
 Fierro v. Reno,
 
 217 F.3d 1, 5 (1st Cir.2000) ("The core notion, in Massachusetts as in many other jurisdictions, is that a
 
 nunc pro tunc
 
 order is appropriate primarily to correct the record at a later date to make the record reflect what the court or other body actually intended to do at an earlier date but did not sufficiently express or did not get around to doing through some error or inadvertence. Thus, a clerical mistake in a judgment might be corrected
 
 nunc pro tunc
 
 when discovered later...”)). Entry of such a judgment would be appropriate since Judge Hupp's March 10, 2003, order clearly indicated his intent that it constitute a final order terminating the action, and there was at most a clerical error in complying with the separate document rule. Furthermore, the court notes that, even if it was not one when entered, Judge Hupp’s order has now become a final judgment by operation of Rule 58(b)(2)(B).
 

 [6]
 

 . Supp. Marchand Decl., Exs. 38 and 39.
 

 [7]
 

 . Supp. Marchand Decl., Ex. 37 at 2.
 

 [8]
 

 . Declaration of Steven Welk, ¶ 3.
 

 [9]
 

 . Following Judge Hupp’s decision, the government terminated forfeiture proceedings, and transferred the motorcycles to state authorities. Two of the vehicles have been ordered returned by the state court; a hearing with respect to the two remaining motorcycles was scheduled for July 10, 2003. (See Petitioner’s Reply to Opposition to Motion for Award of Attorneys' Fees and Costs, Exs. 31, 32; Declaration of Paul Gabbert in Support of Petitioner’s Reply to Opposition to Motion for Award of Attorneys' Fees and Costs ("Gab-bert Reply Decl.”), ¶ 3.)
 

 [10]
 

 . The government argues that it was legally and factually justified in deciding to assert that the errors in the notice were immaterial and did not violate due process because Judge Hupp found that the ATF agent who sent the administrative forfeiture notices did not understand forfeiture law and made mistakes. (See Government’s Opposition to Motion for Attorneys' Fees and Costs at 8-9.) Judge Hupp's finding, of course, focused on the actions of a non-lawyer government agent. The decision of the United States Attorney's Office to ignore known defects in notice — appreciating, as it must have, the import of the Ninth Circuit’s decision in
 
 Marolf
 
 — and to defend against petitioner’s action is a far different type of "mistake” than the one on which Judge Hupp relied.
 

 [11]
 

 . These three cases were cited in
 
 United States v. Gavilan Joint Community College Dist.,
 
 849 F.2d 1246, 1249 (9th Cir.1988).
 

 [12]
 

 . At the time
 
 Pierce
 
 was decided, the cap set by 28 U.S.C. § 2412(d)(2)(A)(ii) was $75 per hour.
 

 [13]
 

 . Motion for Attorneys’ Fees at 18-19.
 

 [14]
 

 . A court in this district has concluded that "[fjorfeiture actions are unique and require specialized knowledge of criminal law and procedure, civil procedure, forfeiture law, and tax law.” See Order Granting Claimant's Motion for Attorneys Fees, in
 
 U.S. v. $27,000 in U.S. Currency,
 
 CV 00-8876 ABC (Ex).
 

 [15]
 

 . Declaration of Paul Gabbert in Support of Motion for Attorneys Fees ("Gabbert Motion Decl.”), ¶ 6; Declaration of Mark Bernheim in Support of Motion for Attorneys Fees ("Bernheim Motion Decl.”), ¶ 1.
 

 [16]
 

 . Gabbert Motion Decl., ¶ 9; Bernheim Decl., ¶¶ 3, 6.
 

 [17]
 

 .Gabbert Motion Deck, ¶ 7 ("During my approximately 26 years of practice in this District, I have not known any competent attorneys who have defended civil in rem forfeiture cases in the district court at the statutory EAJA rates of $75.00 and $125.00 an hour, respectively. Based on my training and experience, I believe that there are only a handful of attorneys in the Central District of California who consistently take and defend these highly specialized civil in rem forfeiture cases. To my knowledge, competent representation in this highly specialized area is not available at the present EAJA adjusted statutory rate of $146.306 per hour”);
 
 id.,
 
 ¶ 9 ("... it is my opinion that there is a shortage of attorneys in Los Angeles who are qualified to assist private citizens in obtaining the return of property subject to federal civil forfeiture for claimed violations of federal statutes”). See Declaration of Eric Honig, ¶ 5 ("My rate for federal civil forfeiture defense is $250-$350 per hour”); Declaration of Janet Sherman, ¶ 5 ("My hourly rate for federal civil forfeiture litigation is $300 per hour”).
 

 [18]
 

 . Gabbert Motion Deck, ¶ 3.
 

 [19]
 

 . Bernheim Motion Deck, ¶ 4.
 

 [20]
 

 . Gabbert Motion Deck, ¶ 11; Declaration of Paul Gabbert in Support of Reply ("Gabbert Reply Deck”), ¶ 2; Bernheim Motion Deck, ¶ 8; Declaration of Mark Bernheim in Support of Reply ("Bernheim Reply Deck”), ¶ 2.